Linda TAYLOR, Gloria Pierce and Laverne Scott, Plaintiffs,

v.

Frances CLEMENT, Superintendent, Bedford Hills, Correctional Facility, Benjamin Ward, Commissioner of Correctional Services, Vito Ternullo, Superintendent, Fishkill Correctional Facility and Matteawan State Hospital, Defendants.

No. 76 Civ. 2825.

United States District Court, S. D. New York.

June 22, 1977.

Bronx Legal Services Corp. (Hunts Point Office), New York City, for plaintiffs, by Stephen M. Latimer, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendants, by Gerald J. Ryan, Asst. Atty. Gen., of counsel.

## OPINION

WHITMAN KNAPP, District Judge.

Plaintiffs, three inmates at the Bedford Hills Correctional Facility, brought this civil rights action seeking injunctive relief and damages as a result of their

being involuntarily placed in protective custody beginning on May 24, 1976. The defendants are Frances Clement, Superintendent of the Bedford Hills Correctional Facility, Benjamin Ward, New York State Commissioner of Correctional Services and Vito Ternullo, Superintendent of the Fishkill Correctional Facility and Matteawan State Hospital. Plaintiffs allege—and we find—that the conditions of their confinement were as severe as if they had been placed in punitive segregation and that they were never accorded the due process rights applicable to prison disciplinary proceedings. On July 7, 1976 we denied plaintiff Taylor's motion for a preliminary injunction on condition that the defendant Clement provide alternative housing arrangements within thirty days. Since then the three plaintiffs have been released from protective custody as well as transferred from Bedford Hills,[1] and thus the claim for injunctive relief is moot. We find that each plaintiff is entitled to recover money damages from defendant Clement.

■ At trial we dismissed the complaint against defendant Ternullo on the ground that there was no evidence that he knew or should have known that the plaintiffs were being deprived of their constitutional rights while being held at the institution for which he was responsible. We similarly dismiss the complaint against defendant Ward, since there is simply no evidence that plaintiffs' situation was brought to his attention. Without such personal awareness on his part, we cannot hold him responsible, *Johnson v. Glick* (2d Cir. 1973) 481 F.2d 1028 *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32. *U. S. ex rel. Larkins v. Oswald* (2d Cir. 1975) 510 F.2d 583, cited by the plaintiffs, is inapposite. In that case judgment against the Commissioner was af-

firmed because he had never denied that he had knowledge of the plaintiff prisoners' complaint although given many opportunities to do so "before the trial, during the trial and after the trial was concluded" 510 F.2d at 589. No such situation is here presented.

■ With respect to defendant Clement, on the other hand, there can be no question that whatever was done to plaintiffs was done at her express direction and under her general supervision and, accordingly, that she is responsible for any unconstitutional deprivations they suffered.

In broad outline the facts are that on May 24, 1976 plaintiffs were summoned before one of defendant Clement's deputies, told there was reason to believe that their lives were in danger and asked whether they would consent to be placed in protective custody. When they replied that they felt themselves in no danger and wanted to remain in the general population, they were handcuffed and placed in solitary confinement against their will. Neither then nor at any other time were they given any opportunity to question the factual basis for their segregated confinement. The evidence conclusively establishes that (at least until we intervened) the conditions of such confinement were identical to those of prisoners subjected to punitive segregation.[2]

■ It is by now hornbook law that a prisoner may not be subjected to punitive segregation without at least a modicum of due process. *Wolff v. McDonnell* (1974) 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935. Assuming without deciding that a prisoner segregated for his or her own protection is not entitled to such due process, we take it to be axiomatic that prison officials cannot

---

1. Plaintiffs were kept in protective custody at Bedford Hills from May 24, 1976 to July 23, 1976. From July 23 to August 2 they were kept in protective custody under similar conditions at Matteawan State Hospital. On August 2, 1976, they were transferred to the Fulton Correctional Facility in the Bronx. Since then, Gloria Pierce has been released on parole.

2. Pursuant to our order of June 30, 1976, plaintiffs were supposed to have been given certain

minimum privileges such as the right to keep books and personal articles in their cells. Testimony at trial suggested that even after that date their conditions were only slightly different from that of disciplinary prisoners; for example, the protective custody inmates were permitted two hours of exercise out of their cells per day as opposed to one.

avoid their due process responsibilities simply by relabelling the punishments imposed on prisoners within their charge. It follows that where, as here, prisoners are without due process of any kind placed in solitary confinement in conditions indistinguishable from punitive confinement, officials seeking to justify their conduct must come forward with evidence which will satisfy the court that safety and not punishment was in fact their aim. In the instant case defendant Clement did not adduce a scintilla of evidence to support such a conclusion. Indeed such evidence as was produced tends in the opposite direction.

■ As already noted, when plaintiffs at first refused to consent to protective custody they were immediately clapped into handcuffs, a procedure not normally applied to persons one is seeking to protect. Subsequently they were served with documents, evidently drafted for use in disciplinary proceedings, on which the words "protective custody" had been typed in. All questioning addressed to plaintiffs proceeded on the obvious premise that plaintiffs were the troublemakers responsible for the alleged unsettled conditions in their dormitory corridor. Indeed, the deputies conducting interviews with the plaintiffs continually accused them of extortion against fellow inmates (an offense with which they were never charged). Finally, there was absolutely no evidence presented that there were in fact any unsettled conditions prevailing in that dormitory or that plaintiffs were in any danger whatever.[3] We therefore conclude that defendant Clement must respond in damages for whatever time plaintiffs were improperly kept in solitary confinement.

■ All but the plaintiff Gloria Pierce were thus confined from May 24 to August 2, 1976 when they were released from Matteawan State Hospital. All but ten days of that time they were in defendant Clement's direct custody. For these ten days they were in the custody of the defendant Ternullo as superintendent of Matteawan. We have already dismissed the case against defendant Ternullo as he apparently was wholly ignorant of any irregularity in plaintiffs' status as segregated prisoners. However, the reason for this ignorance is clearly attributable to defendant Clement. She was responsible for the illegal situation in the first place and must be held responsible for its not having been remedied either in her institution or in the one to which plaintiffs were sent.

■ With respect to plaintiff Pierce, for thirty days of her segregation she was subject to a disciplinary commitment the validity of which is not challenged in this action. She is therefore entitled to no damages for those thirty days.

With respect to the troublesome question of what damages should be assessed, the most helpful discussion we have found is contained in Judge Fogel's opinion in *Mack v. Johnson* (D.C.Pa.1977), 430 F.Supp. 1139 at 1150. He there observed:

"The final matter to be resolved, therefore, is the amount of our damage award. This troublesome problem has been handled in a variety of ways by the Courts. In *Sostre v. Rockefeller*, 312 F.Supp. 863 (S.D.N.Y.1970), rev'd in part, sub nom., 442 F.2d 178 (2d Cir. 1971) cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740

---

**3.** It was represented by defendant Clement that there may have been such evidence in a petition that had been signed by some 27 inmates. However that petition seems to have been irretrievably lost and neither it nor any summary of its content was ever offered in evidence. At the July 7, 1976 hearing on the preliminary injunction certain writings were shown to the court *in camera*. These gave us sufficient concern as to the stability of the prison population and as to possible danger to plaintiffs that we

were reluctant to—and did not—interfere with defendant Clement's decision to keep plaintiffs segregated. See *Gilliard v. Oswald* (2d Cir. 1977) 552 F.2d 456. But those documents also seem to have mysteriously disappeared and were never made part of the record of this action. We need not for present purposes speculate as to why these documents were not produced at trial. Suffice it to say they were not, and their authenticity or probative value was never tested.

(1972), plaintiff was subjected to segregated confinement without a due process hearing under conditions involving severe physical deprivations, needless degradation, loss of rehabilitative work opportunities, loss of wages, loss of schooling and training opportunities, loss of self-improvement through reading, etc., and great mental anguish. The Court awarded plaintiff $25.00 per day for 372 days spent in segregation, for a total of $9,300 in compensatory damages. The Court of Appeals reversed the additional award of $3,270 in punitive damages on the ground that the evidence was not sufficient to support a finding of the requisite pattern of misbehavior on the part of the prison officials to sustain such an award. The Court found, however, that the award of $25.00 per day compensatory damages was reasonable, but held that those damages could not be assessed against the named defendant since he was not a participant in the wrongful conduct perpetrated by his predecessor.

In *Wright v. McMann*, 321 F.Supp. 127 (N.D.N.Y.1970), aff'd in part, 460 F.2d 126 (2d Cir. 1972), the District Court awarded a prisoner a flat $1,500.00 in compensatory damages for his confinement, completely nude, in an isolation cell stripped of all furnishings on several different occasions, for several days at a time. The Court of Appeals sustained the monetary award. See also, *Larkins v. Oswald*, 510 F.2d 583 (2d Cir. 1975) (jury verdict of $1,000.00 for 12 days of solitary confinement); *Neal v. Wolfe*, 346 F.Supp. 569 (E.D.Pa.1972) ($25.00 per day for 16 days of solitary confinement plus $0.60 per day for 191 days lost wages caused by a change in job status resulting from the illegal confinement).

Based on the uncontradicted evidence before us, we conclude that plaintiff has been injured in the following particulars, as a result of defendants' failure to provide plaintiff with a constitutionally adequate due process hearing: FIRST, plaintiff was illegally confined in a segregation cell from August 20, 1973 to September 19, 1973, a period of 30 days; SECOND, plaintiff was deprived during that 30 day period, of the benefit of Bureau of Vocational Rehabilitation training which he was receiving in the field of electronics; THIRD, plaintiff was deprived of the benefit of substantial exercise during his illegal confinement, restricted as he was to only one ten minute walk in the yard, once a day, in contrast to the normal exercise period he would have enjoyed; FOURTH, plaintiff's wages from his work in the electric shop, amounting to $0.50 a day were cut off during his illegal confinement; FIFTH, and perhaps most important, during the 30-day period of solitary confinement, plaintiff was subjected to severe mental suffering and anguish.

\* \* \* \* \* \*

Obviously, there is not, and cannot be any precise formula for calculating damages. At best, courts in grappling with this issue, can only arrive at a damage figure which represents a judgment based upon considerations of equity, reason and pragmatism.

We find that the method utilized by the Courts in *Sostre v. Rockefeller* and *U. S. ex rel. Neal v. Wolfe* of assessing damages on a per diem basis, is, for want of a better method, the most sensible and satisfactory system a Court can use in the calculation of damages; we further find that the sum of $25.00 per day is a reasonable per diem figure."

*Mutatis mutandis* Judge Fogel's observations are applicable to this case. Plaintiffs suffered the same type of deprivation as did the plaintiff before him and it is as impossible here as it was there to adopt any "precise formula cataloguing damages." We agree with Judge Fogel that "the sum of $25.00 a day is a reasonable per diem figure", and so find.

Plaintiffs Taylor and Scott are each accordingly awarded damages in the amount of $1,750.00 and plaintiff Pierce in the amount of $1,000.00.

Settle judgment.