James ADAMS, Jr., et al., Plaintiffs,

v.

Charles L. WOLFF, Jr., et al.,
Defendants.

CV–R–80–258–ECR.

United States District Court,
D. Nevada.

Dec. 30, 1985.

James Adams, Jr., in pro. per.

Richard Bryan, Office of the Atty. Gen. by Brian Hutchins, Criminal Div., Carson City, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff James Adams, Jr. (Plaintiff) has filed objections to portions of the Report and Recommendation filed June 24, 1985, by U.S. Magistrate Phyllis Halsey Atkins. The Report and Recommendation followed three days of evidentiary hearing.

No objection has been raised to the Magistrate's findings that Plaintiff suffered the loss of a recently purchased bedspread by reason of a mistake by defendant Ronald Hansen, and that its value was $37.47. There is no clear error apparent from the record, therefore this Court accepts Magistrate Atkins' recommendation that judgment be granted in favor of Plaintiff and against defendant Hansen in the sum of $37.47.

Plaintiff has objected to the Magistrate's Report and Recommendation concerning the lack of written notice to Plaintiff that he was charged with major violation 313, which may arise upon an inmate being found guilty of three or more general violations within a six-months period. He was found guilty of major violation 313 and sentenced to ten days in punitive segregation at Nevada State Prison (NSP), a maximum security facility. At the time he had been housed at the Northern Nevada Correctional Center (NNCC), a medium security institution.

It is undisputed that Plaintiff received no prior written notice that he would be charged with major violation 313 at a Disciplinary Committee hearing (the second of the day for Plaintiff) on October 17, 1980. At the first hearing on that date, a plea bargain had been reached. Plaintiff pleaded guilty to the general violations of disobeying an order and using abusive language. In return, a major violation (obstructing a search) was dismissed and the Disciplinary Committee agreed to the transfer of Plaintiff to a different unit within NNCC for five days of punitive segregation, to be suspended pending sixty days of clear conduct. At the second hearing the Disciplinary Committee considered the general violation of destroying the property of another. Plaintiff had pleaded not guilty to this charge, and contested it. He earlier had received due notice of the charge. He was found guilty by the Committee, which then charged him with major violation 313, since the destruction of property conviction was Plaintiff's third general violation conviction within a six-months period.

Proper written notice had been provided Plaintiff as to all three general violations. Also, there had been sufficient evidence submitted to support the convictions entered for these offenses. The lack of notice as to major violation 313 was explained by defendant James Dredge, a member of the Disciplinary Committee, as a misinterpretation of the law. It was believed, he said, that 313 was merely an enhancement of punishment rule, rather than a separate violation of the Code of Penal Discipline. The record reveals that Plaintiff had been aware of the existence of 313, but had not realized that it was going to be applied against him.

Conviction of a major violation, such as 313, may be punished by punitive segregation of up to fifteen days and transfer to another institution. Punishment for a general violation may include only five days of punitive segregation within the same institution where the prisoner is housed.

Magistrate Atkins found that the lack of proper notice of the 313 charge against Plaintiff violated his due process rights. She also noted that defendant David Brady, a member of the Disciplinary Committee, had recommended to the Superintendent of NNCC that Plaintiff be transferred to protective custody in NSP. The reason given was that it appeared to the Committee that

another inmate, James Jones, had turned a number of NNCC inmates against Plaintiff, and there was no safe place in NNCC to house Plaintiff in light of such hostility against him.

Plaintiff, who asked for damages, testified before the Magistrate that he lost $12 per week from the blood bank and $20 per month from his prison job as a result of his being transferred to NSP. The Magistrate found that there was evidence to sustain the charges against Plaintiff and that his transfer to NSP was not unlawful. Therefore, she felt that there was no unlawful transfer that could be viewed as the proximate cause of damages for which Plaintiff could be compensated. However, she recommended that he receive an award of $1, as nominal damages, for the denial of due process in not giving him proper notice of the major violation charge against him. Magistrate Atkins also recommended that the major violation be expunged from Plaintiff's prison record. She also held that Plaintiff should be denied punitive damages because he had failed to prove that the defendants' conduct involved reckless or callous indifference to Plaintiff's federally protected rights or that their actions were motivated by malicious intent.

In his objections, Plaintiff contends that he actually served ten days in punitive segregation at NSP, whereas he should only have served five days in segregation at NNCC for the general violations' convictions. The defendants, in response, correctly have noted that he was subject to a five-day punishment for each general violation, and there were two of which he was convicted. Plaintiff also argues that there existed no legitimate security concern that would justify his transfer to protective custody at NSP. He contends that the evidence was false that supported the transfer.

 It is not controverted that procedural due process requires advance written notice to a prison inmate of any major violation charge against him. *See Wolff v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). There-

fore, Magistrate Atkins was justified in finding that Plaintiff's due process rights technically had been violated by the absence of proper notice as to the 313 charge. However, she also was correct in finding that there was sufficient evidence to support the 313 conviction. So long as there is some evidence in the record, that is, some basis in fact, the Disciplinary Boards' conclusion may be upheld. *Superintendent, Mass. Correctional Institution, Walpole v. Hill,* —— U.S. ——, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

 Under 42 U.S.C. § 1983, a plaintiff must prove that a violation of his constitutional rights actually caused him injury before he may recover compensatory damages. *Pino v. Dalsheim,* 605 F.Supp. 1305, 1318 (S.D.N.Y.1984). A plaintiff who has established a violation of his rights, but not actual injury resulting therefrom, may collect only nominal damages. *Id.* Nominal damages should not exceed $1. *Carey v. Piphus,* 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978); *Wiggins v. Rushen,* 760 F.2d 1009, 1012 (9th Cir.1985). Magistrate Atkins' recommendation that Plaintiff be awarded nominal damages of $1 against defendants David Brady, James Dredge and R. Jones, the members of the Disciplinary Committee, is accepted. Her recommendation that the major violation (313) be expunged from Plaintiff's prison record also is appropriate in order to afford him all the relief to which he is entitled. *See Pino v. Dalsheim, supra* at 1319. The Magistrate's conclusion that Plaintiff failed to establish entitlement to punitive damages also is accepted. He failed to prove that the defendants' conduct was motivated by evil intent or that they acted with reckless or callous indifference to his federally protected rights. *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1657, 75 L.Ed.2d 632 (1983).

Magistrate Atkins found that Plaintiff's ten days of punitive segregation ended October 23, 1980, but that he remained in the same cell at NSP under the same conditions, in protective custody, until December 2, 1980. The only actionable condition in-

volved the lack of outdoor exercise. Plaintiff was kept confined in his cell except for approximately ten minutes shower time per day and visits to a doctor. The Magistrate also held that the defendants were justified in holding Plaintiff in protective custody, regardless of whether the concern for his safety was on the part of Plaintiff himself or on the part of the Prison administrators. However, she found no evidence of any special conditions that would explain the failure to provide outdoor exercise time to Plaintiff. This amounted to cruel and unusual punishment, she declared. In any event, she found that Plaintiff, as a protective custody inmate, was entitled to at least eight hours per week of outdoor exercise under the July 18, 1980, amendment to the consent decree in *Craig v. Hocker*, 405 F.Supp. 656 (D.Nev.1975).

The defendants' claims of good faith immunity were rejected by the Magistrate. Prior precedent in the Ninth Circuit, in addition to the *Craig v. Hocker* consent decree, had firmly established Plaintiff's right to outdoor exercise time. Nevertheless, she held that Plaintiff had failed to present any evidence of physical or mental deterioration resulting from his confinement without such exercise time. Magistrate Atkins expressed her conviction that the deprivation was significant even in the absence of proved deterioration. She looked to decided cases for guidance as to the amount of damages. She found that awards between $10 and $35 per day had been made where the prisoner's segregation itself, and not just denial of outdoor exercise, was the basis for damages. The Magistrate held that Plaintiff had been deprived of eight hours per week of outdoor time for a period of almost six weeks. At page 14 of her Report and Recommendation, she stated: "In light of the fact that his detention itself was reasonable and with good purpose, and other conditions, although austere, were not barbarous or abusive, an award of about $16.00 per week, or $96.00, appears reasonable and justified as compensatory damages." Magistrate Atkins indicated that it had not been shown that any named defendant was directly responsible for Plaintiff's damages. However, she noted that defendant Wolff had approved the transfer of Plaintiff, and expressed a belief that Mr. Wolff was aware of the lack of outdoor exercise time for inmates in segregated custody.

Plaintiff has objected to the size of the damages award and the holding of defendant Wolff as being solely liable. He continues to argue that he shouldn't have been kept in protective custody in the first place, and that defendants Brady, Dredge, Jones and Slansky were responsible for his being in segregated custody. Plaintiff insists that, while in segregation, he couldn't visit with his wife, write to wish her a happy birthday, or send her money as a present. He says that she became angry, refused to visit him any more, and sued for divorce. Witness Walt Luster's testimony that the wife did visit Plaintiff after his release from protective custody is branded a lie by Plaintiff. He contends that the deterioration of his relationship with his wife is proof of the mental anguish he suffered.

After a *de novo* review of the record herein, this Court accepts the findings and recommendations of Magistrate Atkins. The Court's own research has failed to uncover a damages award based solely on deprivation of outdoor exercise time. Such deprivation · is compensable, but always seems to have been just one of several wrongs in the decided cases. *See United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589–590 (2nd Cir.1975); *Taylor v. Clement*, 433 F.Supp. 585, 589 (S.D.N.Y. 1977). Plaintiff's retention in protective custody was a security judgment call that the Prison administrators were entitled to make in light of the facts and circumstances known to them at the time. After all, Plaintiff had been convicted of destroying a radio belonging to inmate James Jones. A desire to get even could be anticipated. Any doubt by the administrators should have been resolved in favor of securing the safety of Plaintiff. The burden of proving mental or emotional distress resulting from lack of outdoor exercise time rested with Plaintiff. His evidence on the issue was

refuted in every important respect by the defendants. He did not establish his actual damages by a preponderance of the evidence. Neither the Magistrate nor this Court is free to speculate. *Dougherty v. Barry*, 604 F.Supp. 1424, 1443 (D.D.C. 1985). Plaintiff was not denied time in which to exercise, for he had all day in which to exercise within his cell. It was the right to go outdoors for such purpose that was denied to him. The $96 award recommended by the Magistrate is accepted as proper and reasonable.

The Magistrate also reported and made recommendations concerning a disciplinary hearing held November 10, 1981, which hearing served as the basis for complaint by Plaintiff in a case consolidated with the base case herein. Plaintiff had been charged with fighting or challenging to fight, after being taken to the Prison infirmary with apparent stab wounds. On November 10, 1981, a Disciplinary Committee found him guilty of the charge and imposed five days of punitive segregation. The record of the November 10th hearing shows that Plaintiff testified that merely had been trying to defend himself from an unprovoked attack when he was stabbed. The defendants conceded, at the hearing before Magistrate Atkins, that no probative record was made at the Disciplinary Committee hearing that would support the Committee's finding that Plaintiff was guilty of the violation charged.

The Magistrate's Report states that Plaintiff lost his job at the Over-40 Store in the Prison as a result of his being placed in punitive segregation. The Report indicates that Plaintiff testified that he received $30 per month for working at the Store, plus $10 per month worth of merchandise, such as ice cream bars.

It was concluded by the Magistrate that Plaintiff's right to due process of law had been violated by reason of his conviction and punishment in the absence of probative evidence. She denied the defendants' claims of qualified immunity, for the due process rights of Plaintiff were clearly established at the time.

Plaintiff was lawfully transferred to another institution on January 4, 1982, the Magistrate found. Therefore, he was deprived of his job only from November 10, 1981, until January 1982, a period of approximately two months. Magistrate Atkins recommended that he be awarded $80 in damages for the loss of his job, based on the $30 plus $10 in merchandise per month she found to be his compensation.

The five days Plaintiff spent in punitive segregation constituted a loss of liberty for which he is entitled to compensation, according to Magistrate Atkins. She recommends $10 per day as an appropriate damages award, based on the $10 to $35 per day awards made in similar cases her research had uncovered. She has noted that the conditions of Plaintiff's segregation were not abusive or shocking. Adding the $50 for wrongful punitive segregation to the $80 for loss of job, the Magistrate recommends a total award of $130 in favor of Plaintiff and against defendants Don Helling, James Dredge and Ron Fosnaugh (members of the Disciplinary Committee), and Superintendent John Slansky and Director Charles Wolff (who approved the Committee's recommendations).

In his objections, Plaintiff contends that he earned $55 per month at the Over-40 Store. A review of the record does indicate that he testified that he received $45 per month, together with $10 worth of merchandise (soda pop, coffee, ice cream), for a total of $55 per month. This evidence was not disputed, therefore this Court modifies the Magistrate's findings accordingly, and holds that Plaintiff suffered $110 in compensable damages for the loss of his job.

▪ Plaintiff also objects to the $10 per day damage award recommended by the Magistrate for his wrongful confinement in punitive segregation. He contends that $25 per day per defendant (there are five of them) would be a proper measure of his damages. This Court's research has turned up awards between $25 and $119 per day. *See Smith v. Rowe*, 761 F.2d 360 (7th Cir.1985); *Pino v. Dalsheim*, 605 F.Supp. 1305 (S.D.N.Y.1984); *King v. Hig-*

*gins,* 702 F.2d 18 (1st Cir.1983); *Pitts v. Kee,* 511 F.Supp. 497 (D.Del.1981); *Taylor v. Clement,* 433 F.Supp. 585 (S.D.N.Y. 1977); *United States ex rel. Larkins v. Oswald,* 510 F.2d 583 (2nd Cir.1975). The Magistrate is correct that the duration and conditions of the wrongful segregated confinement are important factors to consider in determining proper compensation to the prisoner. Also, the physical and emotional effects on the inmate are significant. This Court also feels that the value of the dollar, in light of inflation, should be taken into account. Utilizing these considerations, the Court modifies Magistrate Atkins' findings and recommendation by raising the compensatory damages award to $40 per day for the five days Plaintiff was held in punitive segregation. This $200 sum shall be assessed against all five of the defendants collectively, and not against each one. Adding the $110 for loss of job to the $200 for wrongful punitive segregation gives a total of $310 damages arising from the disciplinary hearing of November 10, 1981.

The Report and Recommendation of the Magistrate also covers Plaintiff's claims that he had not been afforded meaningful access to the courts in connection with both of the within consolidated cases. Magistrate Atkins' report goes into some detail to illustrate both that Plaintiff has some acquaintanceship with the law and legal proceedings and that he did enjoy access to the courts in that a number of his cases were decided on the merits. In fact, Plaintiff filed two legal actions in this Court while he was in segregated custody.

The Magistrate's Report discusses Plaintiff's contention that threats were made to transfer him if he kept filing lawsuits. Testimony was heard from both sides. Magistrate Atkins found that any transfer of Plaintiff was grounded in a valid security concern. In fact, she indicated that it appeared to her that Plaintiff had attempted to obtain what he wanted by filing lawsuits, and then offering to dismiss them, or by threatening to sue. The record supports the Magistrate's conclusions.

Plaintiff failed to prove his legal contentions by a preponderance of the evidence. His objections allege that witnesses Robin Bates, Eugene Ewing and Walt Luster all lied in their testimony concerning the access to court issue. A *de novo* review of the record by this Court supports the Magistrate's findings.

IT IS, THEREFORE, HEREBY ORDERED that judgment be entered as follows:

a) As to loss of a bedspread, in favor of plaintiff James Adams, Jr., and against defendant Ronald Hansen in the sum of $37.47;

b) As to lack of proper notice of a major violation 313 charge, in favor of plaintiff James Adams, Jr., and against defendants David Brady, James Dredge and R. Jones in the sum of $1.00, said sum to be a joint and several obligation of the three named defendants;

c) As to lack of proper notice of a major violation 313 charge, that the prison record of plaintiff James Adams, Jr., shall be expunged of the record of his having been found guilty on October 17, 1980, of said major violation charge;

d) As to deprival of outdoor exercise time, in favor of plaintiff James Adams, Jr., and against defendant Charles L. Wolff, Jr., in the sum of $96.00;

e) As to Plaintiff being found guilty of a general violation at a Disciplinary Committee hearing on November 10, 1981, in favor of plaintiff James Adams, Jr., and against defendants Don Helling, James Dredge, Ron Fosnaugh, John Slansky and Charles L. Wolff, Jr., in the sum of $310.00, said sum to be a joint and several obligation of the five named defendants; and

f) As to alleged denial of meaningful access to the courts, in favor of the defendants and against plaintiff James Adams, Jr.