**Ralph Ratton HALL, and all those similarly situated, Plaintiffs,**

v.

**UNKNOWN NAMED AGENTS OF the NEW YORK STATE DEPARTMENT FOR CORRECTIONAL SERVICES FOR APPU UNIT AT CLINTON PRISON, and Eugene LeFevre, Superintendent of Clinton Correctional Facility, Defendants.**

**No. 81–CV–890.**

United States District Court, N.D. New York.

Nov. 14, 1986.

---

Ralph Ratton Hall, pro se.

Robert Abrams, Atty. Gen., David B. Roberts, Asst. Atty. Gen., Albany, N.Y., for defendants.

## OPINION AND ORDER

MUNSON, Chief Judge.

This suit challenges the procedures followed by state officials in placing plaintiff[1] in the Assessment Program and Preparation Unit ("APPU"). The claim came before this court as a 42 U.S.C. § 1983 action, based on infringement of plaintiff's liberty rights, protected by the due process clause of the fourteenth amendment. After a one-day, nonjury trial in which plaintiff and two witnesses for the state defendants testified, the court grants judgment to the plaintiff.

### I. FACTUAL BACKGROUND

Plaintiff is a prisoner in the New York State Department of Correctional Services and is serving a life sentence. On February 15, 1980, while in the Clinton Correctional Facility, plaintiff requested to be placed in voluntary protective custody,[2] allegedly to avoid conflicts with prison guards. Plaintiff explained his apprehension of staying in the general prison population as based on his role as grievance representative and prisoner spokesman. There is no indication of Mr. Hall's having any difficulty with fellow inmates.

On April 23, 1981 plaintiff was transferred to the APPU section of the Clinton Correctional Facility. Shortly thereafter Mr. Hall was offered a program at APPU. Mr. Hall refused to accept the program he was offered. Refusal to accept the program meant automatic classification into the limited privileges status. Mr. Hall was in the limited privileges status for a period of less than four months.[3]

Plaintiff stated that he tried to file grievances several times, but state officials denied receiving them. When plaintiff tried to institute an Article 78 proceeding against state officials and to file a habeas corpus action, his actions were dismissed for failure to exhaust administrative remedies.

APPU is a program designed as an alternative and a remedy for those inmates who were likely to be victimized by other inmates, or who had difficulties adjusting to the general prison population. That is, APPU was designed to help those inmates who received verbal or physical abuse from other inmates or who perceived abuse from other inmates. Trial Tr. at 44, testimony of Charles DuFrain. To get into the program inmates who have been identified as likely candidates are submitted to a series of educational and psychological tests and a program is designed for them.

Inmates who refuse to accept the program offered are placed in the limited privileges program. At the time of the incident involved in this case, the limited privileges status meant staying in confinement 23 hours a day, the right to take a shower two times a week, and limited visiting and correspondence rights, conditions roughly equivalent to those of protective custody. To get out of the limited privileges status, all inmates had to do was express their willingness to accept the program offered.

Upon refusal to accept an assignment in APPU, besides the restrictions appurtenant to limited privileges status, prisoners' records were also affected. Prisoners were warned that "when your good behavior allowance is considered, the Time Allowance Committee considers your entire institutional experiences, including good behavior, efficient and willing performance of

---

1. Although Mr. Hall presented this suit as a class action, plaintiff has not complied with any of the requirements of Rule 23, F.R.Civ.Pro., so this opinion applies only to Ralph Ratton Hall.

2. In the voluntary protective custody status, inmates are secluded from the general prison population, but can return to it upon request, with some limitations related to availability of space. At the time of plaintiff's confinement, prior to being sent to the APPU ward, plaintiff was never in involuntary protective custody. While in involuntary protective custody, inmates have the same restrictions as in voluntary protective cus-

tody, but they are entitled to a hearing to be held within 14 days of confinement to determine whether there is substantial evidence that protective custody is necessary. N.Y.Admin. Code tit. 7, § 304 (1975).

3. Mr. Hall claimed that he was placed in limited privileges status for 18 months, starting February 1980 and ending August 1981. In trial, however, the testimony of Charles DuFrain, a former APPU supervisor at Clinton Correctional Facility, showed that plaintiff was placed in limited privileges status for the period from April 23 to August 11, or a total of 111 days.

duties assigned, progress and achievement in Assignment Program." Defendants' Exhibit C. Prisoners were also warned that refusal to accept the program "may cause loss of good time." *Id.*

Plaintiff challenged the program on two grounds. First, he stated that the program is a behavior-control, experimental program, in which prisoners are submitted to chemical and stress-tolerance experiments. On this side of the challenge plaintiff presented no evidence whatsoever. Secondly, plaintiff claims APPU was used as an alternative to involuntary protective custody, but without the process due to involuntary confinement. This claim stems from plaintiff's allegation that he was offered an APPU program and was subsequently placed in limited privilege status, without following the procedures required by the program. This second allegation requires developing further how APPU inmates are selected.

Mr. Charles DuFrain, a former APPU supervisor, explained the procedures followed to classify an inmate into APPU. Likely candidates are referred by counselors or prison officials. Inmates who may need the program's offerings are given a series of educational and psychological tests to determine the inmates' needs. Tr. at 56. Once the specific needs are identified, the inmates appears before the program committee, at which time the inmate is offered a program based on the committee's findings. Tr. at 57. If the inmate refuses to accept the available program, he is placed into limited privileges status. Tr. at 58.

Plaintiff repeatedly claimed that the procedures followed in his case were not those required for placement into APPU. In response, state defendants described the usual procedures followed for placement in APPU, as explained above, and described the goals and structure of APPU. The state defendants did not show whether plaintiff had been submitted to the battery of tests required to determine the inmate's needs. The state defendants also made no showing that there was any indication that plaintiff had any of the traits or difficulties APPU is geared to address.

## II. DISCUSSION

The legal framework for this case was explained in *Flowers v. Coughlin*, 551 F.Supp. 911, 915–16 (N.D.N.Y.1982), where Judge Foley discussed possible due process issues arising out of an inmate's placement in APPU. For plaintiff to prevail in this due process claim under 42 U.S.C. § 1983, he must prove a deprivation of a liberty interest in such a way that the process constitutionally due was not satisfied. *Id.* at 915, citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

A convicted prisoner has limited, but protected liberty interests, which depend, in this case, on rights created by state law. *Flowers, supra,* at 915. There is no doubt that, by distinguishing the procedures appurtenant to voluntary and involuntary protective custody, the state has created a liberty interest. Inmates placed in involuntary protective custody are entitled to a hearing within two weeks to determine the need for separating the inmate from the general prison population. Analogous principles apply in the context of placement in APPU.

If the state has granted a prisoner a liberty interest in being free from arbitrary transfers to protective custody, then a liberty interest is created in the APPU if it functions as a protective custody unit, regardless of what the state chooses to call it, and the plaintiff should be given an opportunity to prove that he will be able "to function in the general population."

*Flowers, supra* at 916, citing *Parker v. Cook*, 642 F.2d 865, 875 (5th Cir.1981).

Besides the entitlement to not being secluded without a showing of need, the APPU classification procedure itself created an entitlement. Documents and testimony showed that APPU inmates had to be found in need of assistance to adapt to the general population. *See* Defendants' Exhibits E and F. Furthermore, inmates

were supposed to be subjected to a battery of tests to determine their needs. Plaintiff was entitled to both requirements before being offered the choice of APPU or limited privileges status. "It becomes necessary to meet due process requirements when a 'state grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrences of specified behavior.'" *Flowers,* 551 F.Supp. at 915, citing *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980).

■ The state defendants oppose this challenge by showing the salutary goals of APPU, presumably arguing that no "adverse action" is involved here. This was the approach taken by the state in *Flowers. See* 551 F.Supp at 914. Two comments suffice to dismiss this argument. First, even if APPU reflects a benign purpose, which purpose is not in question here, inmates have been granted an interest in not being placed in APPU unless found in need for such program. Secondly, and closely related, inmates have or may have a very strong interest in not being unduly identified as in need of APPU services. The danger of stigmatization is especially relevant in this case, where plaintiff had had much exposure to the prison population, had been in prison for a long time and may be in prison for a long time. Plaintiff quite credibly rejected the APPU offer to avoid being later identified as a victimization-prone inmate.[4]

■ Therefore, placing plaintiff before the choice of entering APPU or going into the limited privileges program was a cur-

tailment of his liberty interest, especially in light of his prior situation in the voluntary protective custody status, where he could have gone back into the general prison population upon request. Furthermore, given that the state made no showing that plaintiff was properly classified or that he was examined or tested to determine his needs before being offered a program,[5] the court finds that the deprivation occurred without the required due process of law. "If the APPU is in practice a protective custody unit, the state cannot change the due process protections available to the prisoner merely by attaching a different label." *Flowers,* 551 F.Supp. at 916.

The court therefore finds that judgment must be entered for plaintiff.

### III. RELIEF

Plaintiff's claims for damages[6] and other relief include loss of his prison nominal and mandatory wage, nominal, punitive and compensatory damages, and a declaratory judgment in order to expunge from plaintiff's institutional record misconduct entries that resulted from the attempt at placing him in the APPU.

■ States are immune from suit for monetary damages under the eleventh amendment, unless the state expressly waives its immunity. *See generally, Minotti v. Lensink,* 798 F.2d 607 (2d Cir. 1986); *see also Jones v. Smith,* 784 F.2d 149, 152 (2d Cir.1986). Since the defendants were sued in their official capacity, the state would be the party ultimately responsible for these damages. Therefore,

---

4. To be classified as a "victimization-prone inmate" exposed plaintiff to suspicion from other inmates that he was liable to suffer homosexual assaults, or was liable to be assaulted by other inmates for acting as an informer. This fear of stigmatization is founded on the language used by the APPU program description for the target population: "Inmates who demonstrate an inability to function in general population due to real or imagined fear of physical and/or verbal confrontation, harassment or pressures from other inmates are the primary target population." Defendants' Exhibit E, p. 1.

5. The court finds that the burden of proof on this issue rested on the state defendants, after plaintiff unequivocally stated that he had not been properly classified and that he had not been examined to determine his needs. Especially after *Flowers v. Coughlin,* 551 F.Supp. at 916, the state's general justification of APPU is totally unsatisfactory to this challenge. The state must show that, for the individual case, the procedural requirements have been met.

6. Plaintiff moved for injunctive relief at the time of the complaint but has since been moved from the APPU ward, so the claims for injunctive relief will not be addressed.

this court is barred from awarding monetary damages in this case. *See Minotti, supra* at 609.

 Even assuming that plaintiff sued defendants in their individual capacity, or that the officials acted ultra vires, plaintiff would not be entitled to compensatory damages. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–103, 104 S.Ct. 900, 907–09, 79 L.Ed.2d 67 (1984). Compensatory damages would have been appropriate only if the officials had acted in violation of plaintiff's clearly defined procedural rights. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). The events that led to this suit occurred in 1981. In 1982 Judge Foley issued *Flowers v. Coughlin*, 551 F.Supp. 911 (N.D.N.Y.1982), where the due process issues relevant to the APPU program were fully discussed. At the time plaintiff was sent to the APPU ward, the contours of the prisoners' procedural rights in this context were not yet clearly defined.[7] *Deane v. Dumbar*, 777 F.2d 871, 877 (2d Cir.1985). Therefore, defendants are not liable for monetary damages.

This court can, however, address the effect of the incidents of this case on plaintiff's record. Plaintiff claims that the several entries of misconduct which now appear on his record and which refer to incidents which occurred during plaintiff's stay at the APPU ward, should be stricken from his record. The court notes that such relief would not be barred by *Preiser v. Rodriguez*, 411 U.S. 475, 493, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973), which stated that habeas corpus was the exclusive remedy for prisoners challenging the fact or duration of their confinement. *See also, Boudin v. Thomas*, 732 F.2d 1107, 1111 (2d Cir.1984). There is no request for transfer or for an amendment of the duration of the confinement, nor is there any circumven-

tion of the requirements for a habeas corpus petition.

 At this time, under the power granted by 42 U.S.C. § 1983, the court remedies the effects of a state action now found unconstitutional. If at some later date the inmate seeks release or a computation of the duration of his confinement, then the appropriate posture will be a petition for habeas corpus. Therefore, the entries for misbehavior dating from April 23, 1981 to August 11, 1981 must be stricken from the record, and no consideration of such entries shall be given for any purpose.

IT IS SO ORDERED.

---

7. At the time of the events that led to this suit, the Southern District of New York had issued *Taylor v. Clement*, 433 F.Supp. 585 (S.D.N.Y. 1977), where plaintiffs were awarded monetary damages for punitive confinement that amounted to a violation of due process. In that case, the court made very specific findings of fact because the officials' actions had been clearly intentional and punitive. Even adscribing knowledge of *Taylor* to the defendants, compensatory damages would not be appropriate in this case where there is no showing of punitive or retaliatory intent.