879 F.2d 380
 Eugene RODGERS, Appellant,
v.
C.E. THOMAS, Warden; Grant Harris, Assistant Warden; Major
Parsons, Security Chief; D. Heard, Counselor III,
Employees Benton Work Release Center, AR
Dept. of Correction, Appellees.
 No. 88-1740.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1988.
Decided July 13, 1989.
 
 Willard Proctor, Jr., Little Rock, Ark., for appellant.
 Lee Taylor Franke, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before McMILLIAN and BEAM, Circuit Judges, and WHIPPLE,* District Judge.
 BEAM, Circuit Judge.
 
 
 1
 Eugene Rodgers sued various employees of the Arkansas Department of Correction under 42 U.S.C. Sec. 1983 (1982), alleging that the defendants deprived him of procedural due process during a disciplinary proceeding and that the conditions of his confinement pending the disciplinary hearing constituted cruel and unusual punishment. After an evidentiary hearing conducted before a magistrate, the defendants moved for a directed verdict. The magistrate found that plaintiff had adduced insufficient evidence to withstand the motion and recommended dismissal. Based on the magistrate's recommendation, the district court dismissed Rodgers' complaint, and Rodgers appeals from this order. We affirm.
 
 I. BACKGROUND
 A. Standard of Review
 
 2
 In reviewing the propriety of granting a motion for directed verdict, we must utilize the same standard as the district court.
 
 
 3
 Such motions are to be granted only when the nonmoving party has presented insufficient evidence to support a jury verdict in his favor. In deciding this question, we must view the evidence in the light most favorable to the nonmoving party without assessing credibility. The nonmoving party is entitled to the benefit of all inferences which may be drawn from the evidence without engaging in speculation.
 
 
 4
 Svoboda v. Bowers Distillery, Inc., 745 F.2d 528, 530 (8th Cir.1984) (citing Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir.1979)).
 
 B. Facts
 
 5
 Rodgers was incarcerated at the Benton Work Release Center, a minimum security facility of the Arkansas Department of Correction. Rodgers was allowed an overnight furlough extending from February 14, 1987, until 3:00 p.m. on February 15, 1987. A condition of the furlough was that Rodgers remain in Pulaski County, Arkansas.
 
 
 6
 On February 14, Rodgers' mother and sister picked him up at the Benton Unit and drove to his sister's home in Pulaski County. Rodgers later visited his girlfriend and several friends but remained in Pulaski County. After these visits, he returned to his sister's house.
 
 
 7
 On the morning of February 15, Rodgers tried to procure a ride back to the Benton Unit. He could not reach his mother or sister, so he called, at work, Earnestine Starr, his sister's roommate. She agreed to drive Rodgers to the Benton Unit. Due to inclement weather, they did not reach the Unit until 3:10 p.m.
 
 
 8
 Meanwhile, Rodgers' mother called Major Parsons at the Benton Unit, stating that "they" had gone to church in Cotton Plant and explaining that Rodgers might be late because of the difficult driving conditions caused by the bad weather. Parsons understood these statements to mean that Rodgers had gone with his mother to church in Cotton Plant, which is located outside of Pulaski County. Parsons confronted Rodgers, upon his return, with this alleged breach of the conditions of furlough, but Rodgers denied leaving Pulaski County.
 
 
 9
 On February 15, 1987, Rodgers was stripped to his underwear and placed in an isolation cell, pending investigation of the alleged breach of institutional rules. On February 18, 1987, he was served with a disciplinary charge for leaving Pulaski County and for giving false information to Parsons. Rodgers was denied a copy of the inmate handbook and had no paper or pencils while in isolation. He requested several witnesses for the disciplinary hearing but was limited to three. On February 19, 1987, the hearing was held before a Disciplinary Committee. The Committee obtained statements from Rodgers' witnesses and his mother via telephone. Based on this evidence, Rodgers was found guilty of both violations. Rodgers remained in the isolation cell until February 20, 1987.
 
 
 10
 During his five days in isolation, Rodgers was given no clothing except socks and underwear. He had no toilet, sink, or bed. He slept on a mattress on the floor and was given a sheet and a blanket. He was allowed one shower during this time. The guards checked on Rodgers frequently and were responsive to his requests to use the bathroom or to get a drink of water. No evidence was presented of unsanitary conditions.
 
 II. DISCUSSION
 A. Procedural Due Process
 
 11
 Rodgers first argues that he presented sufficient evidence to withstand a motion for directed verdict on the issue of whether his procedural due process rights were violated. He contends that he was denied due process in the disciplinary proceeding because he was not afforded the opportunity to call certain witness and had no opportunity to cross-examine Parsons; he was denied the necessary tools for preparing his defense (paper, pencil, and the inmate handbook); and he was punished prior to the hearing by being confined to an isolation cell.
 
 
 12
 The district court effectively addressed and dismissed all of these allegations. On the issue of witnesses, the court noted that the lack of an opportunity to cross-examine Parsons does not support a due process claim because the Disciplinary Committee subsequently confirmed the mother's statement with a follow-up telephone call. The district court also pointed out that although an inmate facing a disciplinary proceeding should be allowed to call witnesses, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2980, 41 L.Ed.2d 935 (1974).
 
 
 13
 Upon notification of the charges against him, Rodgers initially requested three witnesses. Later, Rodgers requested additional witnesses. Allowing additional witnesses would have caused a postponement of the disciplinary hearing. There is no indication that Rodgers would not have been allowed these additional witnesses had he initially requested them upon notification of the charges. While prison officials may not arbitrarily deny an inmate's request to present witnesses, they may circumscribe his right to do so in order to provide "swift discipline." Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985).
 
 
 14
 On the issue of whether Rodgers was able to adequately prepare his defense, the district court held that although Rodgers did not have access to paper, pencil, or the handbook, he was not deprived of the opportunity to mount a defense because statements were obtained from his witnesses. We also note that Rodgers was allowed the requisite twenty-four hours after notification of the charges against him to prepare his defense for the disciplinary hearing. See Wolff, 418 U.S. at 564, 94 S.Ct. at 2978.
 
 
 15
 On the issue of punishment, the district court found that assignment to an isolation cell is the only option available to Benton officials for assignment of inmates under investigation for rules violations. Because the Benton Unit is a minimum security facility, there is no other secure housing location available as these are the only cells at the Unit. The court held that Rodgers' assignment to the cell was not punishment; rather, his punishment for rules violations came later when he was returned to his parent correctional facility.
 
 
 16
 We find the reasoning of the district court persuasive, and we agree that insufficient evidence was presented by Rodgers to support a jury verdict in his favor on the question of procedural due process. Therefore, we affirm the grant of a directed verdict on this issue.
 
 B. Cruel and Unusual Punishment
 
 17
 Rodgers also argues that sufficient evidence was presented to show violation of his eighth amendment rights. When considering an eighth amendment claim, the fact finder must consider the "totality of the circumstances" surrounding the punishment. Rhodes v. Chapman, 452 U.S. 337, 362-63, 101 S.Ct. 2392, 2407, 69 L.Ed.2d 59 (1981). The district court concluded that, based on the totality of the circumstances surrounding Rodgers' confinement, no reasonable juror could conclude that the defendants subjected Rodgers to cruel and unusual punishment.
 
 
 18
 In order to establish an eighth amendment violation after incarceration, a prisoner must establish the unnecessary and wanton infliction of pain, mental or physical. Cowans v. Wyrick, 862 F.2d 697, 699-700 (8th Cir.1988) (citations omitted). In determining whether a prisoner's pain was inflicted unnecessarily and wantonly, we must consider relevant factors such as whether "force was applied in a good faith effort to maintain or restore discipline," the need to apply force, the relationship between the need and the amount of force actually used, and the extent of the injury. Id. at 699 (quoting Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986)).
 
 
 19
 Our first determination, then, must be whether the terms of Rodgers' confinement, pending his disciplinary hearing, was a good faith effort by the prison officials to maintain discipline and whether a legitimate need existed for the disciplinary measures that were taken. Because the isolation cells are the only secure location at the Benton Unit for housing inmates under investigation, we conclude that placing Rodgers in an isolation cell was done in good faith and in a legitimate effort to maintain prison discipline.
 
 
 20
 The deprivation of Rodgers' clothing is not so easily dismissed. Although legitimate justifications for removal of an inmate's clothing exist, see Rust v. Grammer, 858 F.2d 411, 414 (8th Cir.1988) (reducing risk of fire by removing combustible items from cells considered to be an "important penological objective"); Johnson v. Williams, 788 F.2d 1319, 1321, 1325 (8th Cir.1986) (denial of clothing for purposes of control held to be a legitimate reason because prisoner used the clothes to cause flooding in a urinal), deprivation of clothing or bedding, in some circumstances, supports the establishment of an eighth amendment violation, see Maxwell v. Mason, 668 F.2d 361, 363 (8th Cir.1981). Here, viewing the evidence in the light most favorable to Rodgers, we conclude that Rodgers was not a security risk, displayed no suicidal tendency, and had not exhibited uncontrollable behavior. We conclude that forcing Rodgers to remain in his underwear served no justifiable penological objective and was a punitive measure. However, the deprivation of clothing or bedding as a punitive measure, standing alone, does not necessarily constitute cruel and unusual punishment. Id. at 363 n. 8. While it is material that a condition of confinement is imposed for punitive, rather than administrative or protective reasons, "a punishment or condition of confinement is not rendered unconstitutional simply because it serves no valid penological purpose." Id. at 364 n. 9 (citing Hutto v. Finney, 437 U.S. 678, 686 n. 8, 688 n. 12, 98 S.Ct. 2565, 2571 n. 8, 2572 n. 12, 57 L.Ed.2d 522 (1978)).
 
 
 21
 The purpose of and need for deprivation of clothing is therefore but one factor to consider in the analysis of an eighth amendment violation. The Maxwell court specifically noted that "the fact that Maxwell was required to spend fourteen days in his undershorts, in the context of the record as a whole, * * * was clearly but one of the circumstances considered by the district court." Id. at 364. Unlike the prison officials in Maxwell, the guards at the Benton Unit were responsive to Rodgers' needs and wants. Also, unlike Maxwell, Rodgers was given sheets and blankets with which he could cover himself. See Rust, 858 F.2d at 414 (distinguishing Maxwell because prisoners could wrap themselves in sheets and blankets).
 
 
 22
 The extent of injury, if any, is also "a relevant factor as to whether or not the punishment inflicted was cruel and unusual" and "a court must look to the extent of the pain inflicted in determining whether a constitutional deprivation occurred." Cowans, 862 F.2d at 700 (citations omitted). Here, Rodgers alleged only that he suffered from flu symptoms after being placed in the isolation cell, and he presented no evidence of physical or emotional pain or injury.
 
 
 23
 In summary, although the deprivation of Rodgers' clothing was totally unjustified, the other conditions of his confinement were humane and sanitary, and the extent of the pain and injury which he suffered, if any, was minimal. Consequently, we agree with the district court that, based on the totality of the circumstances surrounding his confinement, Rodgers did not suffer "unnecessary and unwanton infliction of pain" and thus was not subjected to cruel and unusual punishment. Furthermore, Rodgers failed to fulfill the second aspect of the Cowans test by failing to present evidence of pain. Such lack of evidence allows the directed verdict to stand on the issue of cruel and unusual punishment. Rodgers has failed to establish either aspect of an eighth amendment violation.
 
 III. CONCLUSION
 
 24
 Based on the foregoing reasons, we affirm the district court's dismissal of Rodgers' complaint.
 
 
 
 *
 The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri, sitting by designation