Kinsey GORDON, James Samuel Draper, Jr., William Lee Carr, Kevin Daniel Ross, Troy A. Mintle, Shawn E. Foster, Harry J. Perkins, Thomas D. Overton, Charles Anthony McCullough, John E. Zane, Plaintiffs,

v.

Steve FABER, Defendant.

Nos. C 90–0044 to C 90–0047, C 90–0061 to C 90–0063, C 90–0087, C 90–0097 and C 90–0135.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Nov. 5, 1991.

See also 800 F.Supp. 797.

Anna Wirt O'Flaherty, Cedar Rapids, Iowa, for plaintiffs.

Kristin W. Ensign, Asst. Atty. Gen., Des Moines, Iowa, for defendant.

## ORDER

JARVEY, United States Chief Magistrate Judge.

This matter comes before the court pursuant to trial on the merits conducted at the Iowa Men's Reformatory at Anamosa, Iowa, September 10, 1991. On October 29, 1991, the parties filed a consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Honorable David R. Hansen referred this matter to the undersigned United States Magistrate Judge on October 29, 1991. Based on the evidence and arguments of counsel, the court enters the following findings of fact, conclusions of law, and directs that judgment be entered in favor of plaintiffs Gordon, Carr, Ross and Mintle and against defendant Steve Faber. The court directs that judgment be entered in favor of Steve Faber and against plaintiffs Draper, Overton, McCullough, Zane and Foster.

## NATURE OF THE ACTION

In this action filed pursuant to 42 U.S.C. § 1983, the plaintiffs contend that they were forced to exercise without hats or gloves in sub-freezing weather on February 27, 1990 at the Iowa Men's Reformatory (IMR) at Anamosa, Iowa. The defendant admits that he gave an order to his subordinates to prohibit the use of hats and gloves at exercise for inmates in Living Unit D, third floor, that day. He denies that hats and gloves were necessary and contends that this deprivation does not amount to the level of cruel and unusual punishment.

## FINDINGS OF FACT

On February 27, 1990, Lt. Steve Faber was in charge of inmates in Living Unit D assigned to the third floor (LUD-3). There were approximately 68 inmates on the floor that day. Due to a concern about the presence of a weapon in LUD-3, all inmates on that floor were strip searched. Following strip searches, inmates Gordon, Carr, Ross and Mintle, among others, were sent outside for exercise.

The residents of LUD-3 are not members of the general population of the institution. They are in disciplinary and administrative segregation status. They are given restricted exercise periods outdoors and are required to exercise in a special caged area measuring seven feet by twenty-one feet. They are escorted to the exercise pen in handcuffs that are removed upon their entry into the pen. Three inmates exercise together in this pen. They are restricted—by the size of the pen, the absence of recreation equipment, and a rule prohibiting "horseplay"—from engaging in activity other than basic calisthenics and walking.

On February 27, 1990, inmates Gordon, Ross and Mintle had made a decision to forego outdoor exercise due to weather reports broadcasted earlier that morning on the radio. However, following their strip searches, all of the plaintiffs were required to go to the exercise pen. All requests for hats and gloves were denied. Lt. Faber ordered his subordinate officers to deny requests made by prisoners for hats and gloves. Hats and gloves were available in the immediate area. They were denied by Faber simply because he did not believe that the weather warranted the issuance of these items. Inmates were given hip-length denim jackets with pockets. The jackets also have collars that can be turned up around a person's neck.

Lt. Faber based his decision to deny the hats and gloves upon his own exposure to the climate for three to four minutes as he came into the IMR from the parking lot and crossed through the yard on his way to LUD-3. Faber also contends that the decision was based, in part, on the fact that

there were inmates in the general population yard who were not wearing hats and gloves. However, these inmates were allowed to go indoors and outdoors at will and there is no suggestion that any of them had remained continuously outside for exercise periods exceeding an hour. He claims that he contacted the powerhouse at IMR where temperatures are recorded daily sometime between 7:00 a.m. and 12:00 noon on February 27, 1990. He further claims that it was reported to him that the outdoor temperature was 33 degrees fahrenheit. However, the powerhouse log reveals that the temperature at IMR never reached 33 degrees during the morning of February 27, 1990. This court does not believe that Lt. Faber ever called the powerhouse on that morning to determine the outdoor temperature.

Lt. Faber testified that the first plaintiffs went outside at 8:00 a.m. on February 27, 1990 and the last plaintiffs returned at 11:01 a.m. Climatological records from the United States Department of Commerce show that the temperature in Dubuque, Iowa, approximately 60 miles away from the reformatory, was 30 degrees Fahrenheit at 9:00 a.m. on February 27, 1990. Iowa Department of Agriculture records show that the wind-chill factor in Dubuque at 9:00 a.m. was six degrees. In Cedar Rapids, Iowa, approximately 20 miles from the reformatory, temperatures varied between 26 degrees at 6:50 a.m. to 34 degrees at 10:50 a.m. Records from the reformatory itself indicate that the temperature at the prison powerhouse was 29.3 degrees at 7:00 a.m. and 31.6 degrees at 11:00 a.m. The skies were overcast and it was a windy, cold day in Anamosa.

Seven of the plaintiffs complained about the cold upon their return to their living unit and were seen by a prison nurse. The nurse only filed a report with respect to plaintiff Mintle. After examining Mintle at 4:30 p.m., the nurse concluded that there was no evidence of frostbite or other injury resulting from his exposure to the cold. Neither Mintle nor the other plaintiffs claim any long-term injury from exposure to the cold.

## CONCLUSIONS OF LAW

The district court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1343(a)(3). The court also has personal jurisdiction over the defendants.

■ The language of the Eighth Amendment to the United States Constitution, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," manifests "an intention to limit the power of those entrusted with the criminal law function of government." *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Rodgers v. Thomas*, 879 F.2d 380, 384 (8th Cir.1989). Although no simple concise definition of cruel and unusual punishment has been offered by the courts, *Tyler v. Black*, 865 F.2d 181, 183 (8th Cir.) (*en banc*), *cert. denied*, 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989), it is obduracy and wantonness that characterizes the conduct prohibited by the Eighth Amendment. *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084. Plaintiffs must prove that the defendant acted with "deliberate indifference" to their needs to prove an Eighth Amendment violation. *Wilson v. Seiter*, — U.S. —, —, 111 S.Ct. 2321, 2328, 115 L.Ed.2d 271 (1991). The determination of what constitutes cruel and unusual punishment depends upon evolving standards of decency. *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). When considering an Eighth Amendment claim, the fact finder must consider the totality of the circumstances surrounding the punishment. *Rodgers*, 879 F.2d at 383 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 362–63, 101 S.Ct. 2392, 2407–08, 69 L.Ed.2d 59 (1981)).

■ Plaintiffs assert that defendant violated their Eighth Amendment right to be free from cruel and unusual punishment by

ordering them outside in sub-freezing weather without hats or gloves for over one hour. Adequate clothing is one of the necessities of life of which prison officials cannot deprive an inmate. *Maxwell v. Mason,* 668 F.2d 361, 365 (8th Cir.1981); *Knop v. Johnson,* 667 F.Supp. 467, 475 (W.D.Mich.1987). Prison officials violate the Constitution if they provide inmates with clothing that is "patently insufficient to protect [them] from the cold in the winter months." *Balla v. Idaho St. Bd. of Corrections,* 595 F.Supp. 1558, 1575 (D.Idaho 1984). As the *Knop* court summarized,

> Inmates exposed to harsh winter conditions without proper winter clothing may indeed suffer "inflictions of pain" that are "totally without penological justification," in violation of the Eighth Amendment.

*Knop,* 667 F.Supp. at 475.

■ The only penological interest even suggested by defendant at trial to support his decision to withhold hats and gloves was his concern that the plaintiffs could hide contraband in the hats and gloves. The court does not believe that this was a motivating factor in the defendant's decision to deny the hats and gloves. Even if it were a motivating factor, it would not be sufficient justification for this action. While the court recognizes the wide latitude given to prison officials to maintain security in the prison facility, defendant's security concerns are simply unfounded in this situation.

■ Plaintiffs must prove that defendant acted with "deliberate indifference" when he ordered them outside without hats and gloves. *Seiter,* — U.S. at ——, 111 S.Ct. at 2326–27. Testimony from both prisoners and guards indicated that hats and gloves were not only available at the time plaintiffs were ordered outside, but were located within a very short distance from the plaintiffs when they went outside. Given the lack of any valid penological reason to withhold the hats and gloves, and the ready availability of the hats and gloves, the defendant's decision to withhold them rises to the level of deliberate indifference to the needs of the plaintiffs.

■ Each plaintiff seeks $500.00 in compensatory damages and $500.00 in punitive damages. However, as noted in the findings of fact plaintiffs have failed to prove the existence of any permanent injury resulting from exposure to the cold weather. The court believes, however, that plaintiffs experienced discomfort and pain. Some damages are therefore appropriate. *Cowans v. Wyrick,* 862 F.2d 697, 699 (8th Cir.1988). The court finds that damages of $75.00 for plaintiffs Gordon, Carr, Ross and Mintle are appropriate compensation for the one hour deprivation of their Eighth Amendment rights.

Several of the original nine plaintiffs have voluntarily dismissed their claims against defendant. Plaintiffs Draper and Overton voluntarily dismissed their actions on August 12, 1991. At the commencement of the trial of this action plaintiffs' counsel informed the court that plaintiffs McCullough and Zane wished to voluntarily dismiss their claims against defendant. Neither McCullough nor Zane were present at the trial. Finally, during the trial plaintiff Foster announced his desire to voluntarily withdraw from the case as well. The court therefore directs that judgment be entered in favor of defendant against each of these plaintiffs.

Upon the foregoing,

IT IS ORDERED

That judgment be entered in favor of plaintiffs Gordon, Carr, Ross and Mintle in the amount of $75.00 each. Costs shall be taxed to the defendant. The court further orders that judgment be entered in favor of defendant Faber against plaintiffs Draper, Overton, McCullough, Zane and Foster.