Bobby MAXWELL (Ahmid Latfee Jamal Ali), Appellee,

v.

Thomas K. MASON, et al., Appellants.

No. 81–1033.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1981.

Decided Dec. 23, 1981.

Paul L. Douglas, Atty. Gen., Lynne Rae Fritz, J. Kirk Brown (argued), Asst. Attys. Gen., Lincoln, Neb., for appellants.

Jerry David Slominski, Lincoln, Neb., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and OLIVER,* Senior District Judge.

JOHN W. OLIVER, Senior District Judge.

## I.

Bobby Lee Maxwell, an inmate at the Nebraska State Penitentiary, brought this action under 42 U.S.C. § 1983 in the district court against Warden Robert F. Parratt, Deputy Warden Thomas K. Mason, Correctional Lieutenant Jerry Wright, and other employees of the penitentiary.[1] The case was tried to the court without a jury. Defendants Mason and Wright appeal the district court's[2] judgment against them which awarded plaintiff $1,400.00 in compensatory damages.[3] We affirm.

The district court dictated its findings and conclusions in the record at the close of the trial. It did not otherwise find the facts specially or state separately its conclusions of law. Nor did it file any written opinion or memorandum of decision. Both sides, however, apparently assumed in the trial court, and no question is presented in this Court, that the procedure followed complied with the requirements of Rule 52(a).[4]

■ We have concluded, not without some reluctance, to decide the merits of the pending appeal rather than remand to the trial court to make findings of fact specially and to state separately its conclusions of law in accordance with the requirements of Rule 52(a). We do so for the reason that the requirements of that rule are not jurisdictional, see Swanson & Youngdale, Inc. v. Seagrave Corp., 561 F.2d 171, 173 (8th Cir. 1977), and because the record in this case "sufficiently informs the court of the basis for the trial court's decision on the material issue" presented, within the meaning of the rules stated in Finney v. Ark. Board of Corrections, 505 F.2d 194, 213 n.16 (8th Cir. 1974).[5]

---

* The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri, sitting by designation.

1. Wright has since been promoted to Correctional Captain and Maxwell released on parole. The District Court granted a motion to dismiss as to all other defendants, including Warden Robert F. Parratt.

2. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

3. The district court dismissed plaintiff's prayer for punitive damages.

4. The record further shows that neither side filed any motion pursuant to Rule 52(b) for the trial court to amend its findings or to make any additional findings. Nor was any question raised concerning the trial court's compliance with the requirements of Rule 52(a) in defendants' motion for a new trial or in the briefs filed in this Court.

5. Finney pointed out that the "absence of specific findings does make appellate review more difficult," and further that Rule 52(a) "fulfills a threefold purpose: (1) to aid appellate review by affording a clear and concise statement of the basis for the court's decision. Cross v. Pasley, 267 F.2d 824 (8th Cir. 1959); (2) to make the decision of the court definite to aid in future application of the doctrine of res judicata; and (3) to cause the trial judge to fully and conscientiously consider the basis for his decision. United States v. Birnbach, 400 F.2d 378 (8th Cir. 1968)." 505 F.2d at 212 n.15.

We add that difficulties concerning the application of the "clearly erroneous" standard of Rule 52(a), see Nangle, The Ever Widening Scope of Fact Review in Federal Appellate Courts—Is the "Clearly Erroneous Rule" Being Avoided, 59 Wash.U.L.Q. 409 (1981), will be avoided by full and careful compliance with the requirements of Rule 52(a) by all district courts in this Circuit.

## II. *The Eighth Amendment Violation*

Appellants first contend the district court erred in equating confinement in undershorts with total nudity and in failing to evaluate the totality of the circumstances of plaintiff's confinement in concluding that it constituted cruel and unusual punishment.

The district court found the following facts: Maxwell was transferred to a solitary confinement cell in "C" Gallery on September 6, 1978 at 6:30 a. m. for violating a prison regulation prohibiting the covering of cell-lights. Confiscated upon the transfer was Maxwell's clothing other than a pair of undershorts and bedding other than a mattress. Maxwell remained thus confined until September 20, 1978, for a period of fourteen days. The district court found the deprivation of clothing and bedding to bear "no relationship whatever to any security measure under the facts of this case" and to amount to "an unnecessary infliction of pain."[6] The district court further found that such treatment was "wholly inconsistent with the current minimum standards of respect for the dignity of human beings." Although evidence was introduced by both plaintiff and defendants regarding the temperature in Maxwell's cell, the district court made no specific finding on that issue.[7]

The record reveals, contrary to appellants' argument, that the district court properly evaluated all the facts and circumstances relating to Maxwell's confinement in "C" Gallery. It is obvious that the district court weighed all of the evidence in light of the fact that it dismissed plaintiff's claims of inadequate medical treatment, deprivation of due process and First Amendment rights, unsanitary food and unnecessary use of force. It is undisputed, however, that Maxwell was not suicidal or dangerous. The district court's finding that plaintiff's confinement as a punitive measure, in isolation, without adequate clothing or bedding fully supports its conclusion that an Eighth Amendment violation was established under all the facts and circumstances of this case.[8]

Moreover, the district court properly emphasized its awareness that federal courts must tread warily in reviewing the administration of internal prison discipline, *Bell v. Wolfish*, 441 U.S. 520, 527, 99 S.Ct. 1861, 1868, 60 L.Ed.2d 447 (1979), but noted that "it is equally clear that prisoners are not to be stripped and deprived of their constitutional rights when the prison gate shuts behind them."

Appellants direct this Court's attention to the following statement of the district court:

---

**6.** These findings are fully supported by the record. Despite the fact that the prison rule against covering cell-lights was found by the trial court to be a reasonable security measure, there is little or no evidence in the record to indicate that Maxwell ever used his clothing or bedding to cover the cell-light. Rather, the evidence strongly indicates to the contrary. The district court specifically found that Maxwell covered his cell-light several times after being transferred to "C" Gallery and being deprived of clothing and bedding. Clearly Maxwell must have covered the cell-light in "C" Gallery with the stationery and personal hygiene items he was provided while there before finally throwing those items from his cell on September 16. The stationery and personal hygiene items apparently were not returned to Maxwell and after September 16 no further incidents of his covering the cell-light were recorded.

Moreover, appellants could offer no response at oral argument to this Court's inquiry as to why the prison officials deprived Maxwell of his clothing and bedding. Appellants conceded that Maxwell was considered neither suicidal nor prone to violence.

**7.** The testimony as to the temperature in Maxwell's cell is conflicting. Several officers testified that the temperature in the Adjustment Center in early September would have been at least 70 degrees and probably warmer. There was also some testimony that the warmest part of the cell would have been close to the front and not the rear of the cell. However, Maxwell testified that he huddled in the corner of his cell to stay warm.

**8.** Accordingly, we need intimate no judgment as to whether deprivation of clothing or bedding as a punitive measure, standing alone, would be cruel and unusual. *Cf. Jackson v. Bishop*, 404 F.2d 571 (8th Cir. 1968) (any use of strap as disciplinary measure is cruel and unusual regardless of circumstances).

I find the evidence credible and I credit the evidence to the effect that this plaintiff, for fourteen days, was deprived of any kind of bedding other than a mattress or any clothing except some underwear shorts or pants, *which the court finds would be the same as if he had no underpants or shorts.* (emphasis added)

While this statement might give the impression that the district court based its conclusion solely on the fact that Maxwell was required to spend fourteen days in his undershorts, in the context of the record as a whole, that was clearly but one of the circumstances considered by the district court.

The district court expressly relied on *Wycoff v. Brewer*, 572 F.2d 1260, 1263 (8th Cir. 1978), wherein the following conditions prevailed:

> [T]he inmate] was confined completely nude; the cell was or could be darkened; the inmate had no bedding or cover. While the cell contained a sink and a commode, in some circumstances the inmate was not provided with toilet articles or toilet paper. He did receive three meals a day and could help himself to water from the sink in his cell.

Although the inmate in *Wycoff* was denuded entirely, we agree with the district court that that distinction in the context of all the facts and circumstances of this case, makes no constitutional difference.

The plaintiff in *Wycoff*, was "a sociopathic criminal who is violent and dangerous and who is a strong man physically." He was confined in administrative segregation because he "engaged in assaultive conduct and destroyed or damaged state property." While there he "threatened guards, screamed obscenities, destroyed considerable property, and threw urine and fecal matter on guards passing by his cell." Finally, he was confined in the above described "strip cell" after he "destroyed his entire cell." 577 F.2d at 1264. Clearly his confinement under those rigorous conditions was for practical and not punitive or vindictive reasons. *Id.* at 1266 n.7. *Cf. Kelly v. Brewer*, 525 F.2d 394, 399 (8th Cir. 1975) ("Unlike punitive segregation, including punitive isolation which is imposed by way of punishment for past misconduct, administrative segregation is not punitive and it looks to the present and the future rather than to the past.")[9]

This Court in *Wycoff* "condemn[ed] without reservation plaintiff's confinement under the conditions that have been mentioned," 572 F.2d at 1266, and stated that "today, confinement of a prison inmate in a cell under conditions described ... would unquestionably be held unconstitutional ...." *Id.* at 1263 n.5.[10]

Appellants cite *Novak v. Beto*, 453 F.2d 661, 666 (5th Cir. 1971), *reh. denied*, 456 F.2d 1304, *cert. denied* 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233 (1972), in support of the

---

**9.** Although a punishment or condition of confinement is not rendered unconstitutional simply because it serves no valid penological purpose, *Hutto v. Finney*, 437 U.S. 678, 686 n.8, 688 n.12, 98 S.Ct. 2565, 2571 n.8, 2572 n.12, 57 L.Ed.2d 522 (1978), it is material that a condition of confinement is imposed for punitive rather than administrative or protective reasons. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981); *Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 861 (4th Cir. 1975); *Kelly v. Brewer*, 378 F.Supp. 447, 453 (S.D.Iowa 1974).

The distinction to be observed was well stated in *Wycoff v. Brewer*, 572 F.2d 1260, 1263 n.5 (8th Cir. 1978):

> The difference between confinement in a strip cell and confinement in ordinary administrative segregation was pointed up by the district court in its opinion in the *Kelly* case,

*supra.* Attention should be called to the fact that the rigor of confinement in a strip cell was not particularly related to the cell itself but rather to the conditions of the confinement therein which could be changed for better or for worse by prison personnel.

**10.** In *Wycoff* the question of the constitutionality *vel non* of plaintiff's confinement was not presented, as plaintiff's prayer for injunctive relief had been mooted at the time of the appeal and the court had before it only the question whether the district court erred in dismissing the complaint as to all defendants to the extent plaintiff sought pecuniary damages, in view of the qualified immunity for prison officials established in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). 572 F.2d at 1262.

proposition that conditions of solitary confinement will not support a finding of cruel and unusual punishment so long as the basic elements of hygiene are provided for. We do not agree that *Novak* supports such a broad proposition. *Novak* was a class action in which the entire system of solitary confinement of the Texas Department of Corrections was challenged as unconstitutional. The administration of solitary confinement there included provisions requiring inmates to be furnished "coveralls, a gown or some other form of clothing, i.e., tee shirt and undershorts, tee shirts and regulation trousers" and "the necessary number of blankets to keep them warm." 453 F.2d at 668. Under those circumstances, the court held, the district court did not err in concluding that solitary confinement as administered by the Texas Department of Corrections was constitutional.

█ Moreover, it is clearly the law in this Circuit that clothing is a "basic necessity of human existence" which cannot be deprived in the same manner as a privilege an inmate may enjoy. *Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 207–8 (8th Cir. 1974). Any deprivation of basic necessities takes on added importance where it occurs in a condition of solitary confinement. However, the reason for that resides not solely in the requisites of proper hygiene, but in that "the Eighth Amendment's basic concept 'is nothing less than the dignity of man.'" *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968), *citing Trop v. Dulles*, 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958).

The district court's findings of fact in regard to the Eighth Amendment violation are not clearly erroneous.

### III. *Remedy*

Appellants present two questions in regard to the district court's award of damages. First, appellants contend, the district court erred in ignoring, "without comment," the qualified immunity of prison officials established in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Second, appellants argue that the damages awarded by the district court were arbitrary and excessive.

Regarding the scope of the qualified immunity for prison officials established in *Procunier*, the Supreme Court elaborated as follows:

> The official ... will not be shielded from liability if he acts "with such disregard of the [plaintiff's] clearly established constitutional rights that his actions cannot reasonably be characterized as being in good faith." 420 U.S., at 322 .... The constitutional right infringed by [prison officials] was clearly established at the time of the challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm. 434 U.S. at 562, 98 S.Ct. at 859.

█ Contrary to appellants' first contention, the district court did not ignore the issue of a qualified immunity, but rather observed that "the Eighth Circuit ... pointed out six years ago [in *Finney, supra*] that prisoners placed in punitive isolation may not be deprived of basic necessities, including light, heat, ventilation, sanitation, clothing and a proper diet." The district court expressly found that "the judgment ... will be ... against Messrs. Mason and Wright, both of whom knew about all of the details connected with Mr. Maxwell's situation" and dismissed the claim against Warden Parratt because of insufficient evidence that he knew or should have known of the details of Maxwell's confinement in "C" Gallery. Under the circumstances, it cannot be said that the district court erred in finding and concluding that appellants were not entitled to the protection of a good faith immunity. *Compare Wycoff v. Brewer*, 572 F.2d 1260, 1263 n.5, 1267 (1978).

Appellants' second contention is in two parts. First, that defendant Wright did not know of the constitutional violation for the same length of time as did defendant Mason and second, that $100.00 per day in compensatory damages is arbitrary and excessive.

█ The district court concluded that under the factual circumstances Wright was

aware of all the details of Maxwell's condition from the time of his transfer to "C" Gallery on September 6, 1981. The record establishes that Correctional Lieutenant Wright visited and conversed frequently with inmates in the Adjustment Center and that he was well aware of what went on there. Wright testified that he knew Maxwell was in the "dry cell" and that Maxwell's clothing had been confiscated. He was uncertain only in regard to "exactly how long he was in there." The record shows that Wright hand delivered an order from Deputy Warden Mason to Maxwell in "C" Gallery on September 13, and that as Chairman of the "Adjustment Committee" he presided at a hearing held September 15 at which Maxwell personally appeared, which related to two Misconduct Reports charged to Maxwell. The district court's finding is not clearly erroneous in that it is fully supported by the record, and will not be disturbed on appeal. Fed.R.Civ.P. 52(a). *See McCluskey v. Board of Education*, 662 F.2d 1263, at 1265 (8th Cir. 1981).

In support of its argument that the damages awarded by the district court are excessive and arbitrary, appellants contend that the district court's reliance upon *Taylor v. Clement*, 433 F.Supp. 585 (S.D.N.Y. 1977), and *Wright v. McMann*, 321 F.Supp. 127 (N.D.N.Y.1970), rather than supporting damages in the amount of $1,400.00, actually indicates that the damages awarded are excessive.

Two of the plaintiffs in *Taylor* were awarded $1,750.00 damages and another plaintiff, $1,000.00. Fifteen hundred dollars were awarded the plaintiff in *Wright.* While it may be true that the per diem rate mentioned in *Taylor* was lower than the per diem rate mentioned by the district court in this case, the record shows that· the judgment entered in plaintiff's favor simply assessed damages in the "total amount of $1,400.00 plus payment of all taxable court costs incurred" against the defendants Thomas Mason and Jerry Wright.

■ *Larkins v. Oswald*, 510 F.2d 583 (2nd Cir. 1975), rejected a claim that a jury verdict in the amount of $1,000.00 for

twelve days of solitary confinement was excessive. We cannot say as a matter of law that the trial court's award of $1,400.00 damages was either arbitrary or excessive.

For the reasons stated, we affirm the district court.