Eugene **LITTLEWIND**, Plaintiff,

v.

Richard **RAYL**, Director of Institutions; Terry Haines, Warden of the North Dakota State Penitentiary; Bob Coad, Director of Security, North Dakota State Penitentiary; Cordell "Corky" Stromme, Daryl Fischer, Linda Leuwer, Stan Cadotte, and Bill Wilz, North Dakota State Penitentiary Staff, Defendants.

Civ. No. A1–91–079.

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 1, 1993.

Donald R. Becker, Thomas J. Gaughan, Fargo, ND, for plaintiff.

Bill Peterson and JoAnn C. Toth, Asst. Attys. Gen. N.D., Bismarck, ND, for defendants.

## MEMORANDUM AND ORDER

GOLDBERG, Judge, sitting by designation.

Before the court is plaintiff Eugene Littlewind's Motion for Judgment as a Matter of Law and/or Motion for New Trial.

### STATEMENT OF FACTS

Plaintiff, Eugene Littlewind, filed a Second Amended Complaint on June 21, 1993, in which he sought damages pursuant to 42 U.S.C.1983 for violation of his Eighth and Fourteenth Amendment rights while he was incarcerated at the North Dakota State Penitentiary in April, 1988. Plaintiff named numerous guards and officials at the Penitentiary, as well as the Penitentiary itself[1], as defendants in the complaint. A jury trial was held in this matter from July 12, 1993 through July 22, 1993. On July 22, 1993, the jury reached a verdict for defendants.

Plaintiff then submitted his Motion for Judgment as a Matter of Law and/or Motion for New Trial. Plaintiff contended that the evidence did not support judgment for defendants. In addition, several errors by the court, including denial of plaintiff's motion for mistrial[2], required a new trial. Defendants filed a response in which it disputed all of plaintiff's arguments. Oral argument was heard by the court on these motions on August 6, 1993.

The court notes from the outset that the facts underlying plaintiff's complaint and present motions are not in dispute. Uncontradicted evidence at trial demonstrated that by April, 1988, plaintiff had been convicted of numerous crimes, including burglary, assault, disorderly conduct, auto theft, attempted criminal trespass, and escape. Plaintiff had also committed disciplinary violations at the North Dakota State Penitentiary prior to April, 1988.

Both parties also agree that on April 5, 1988, plaintiff and three other inmates attacked guard Frank Freezon in a hallway of the administrative segregation unit of the North Dakota State Penitentiary. The inmates poked Mr. Freezon with a broken broom handle. The parties agree that plaintiff returned to his cell within a few minutes after the conclusion of the attack, although conflicting evidence existed as to whether plaintiff made verbal threats to the guards during this time. Undisputed evidence showed, however, that plaintiff fully cooperated in permitting defendants to handcuff and shackle him, and transport him to a cell in the observation unit.

In the observation unit, plaintiff was placed face down and without any clothes, in a "North Dakota-style" four point restraint[3] at approximately 1:00 p.m. In this form of restraint, plaintiff was handcuffed behind his back, his legs were shackled together by leg-irons, and a length of chain connected the two behind his back. The evidence regarding the length of the chain, called a Martin chain[4], ranged from a few inches to several feet. Plaintiff remained face down on his bed, with his feet bowed toward his head. The evidence was inconsistent whether plain-

---

1. The North Dakota State Penitentiary was subsequently dismissed from the case.

2. During defendants' counsel's opening argument, counsel stated that plaintiff was a suspect in a murder trial. Plaintiff immediately objected as prejudicial, non-probative, and irrelevant, and moved for a mistrial. The court sustained plaintiff's objection, but denied plaintiff's motion for mistrial. The court instructed the jury to disregard defendants' counsel's statements.

3. The evidence at trial established that other penitentiaries used another form of four point restraint in which the inmate is spread-eagled on a bed, with each wrist and ankle handcuffed or strapped to a corner of the bed.

4. The evidence demonstrated that the Martin chain was designed to be placed around an inmate's waist so that handcuffs could be attached to it during transportation of the inmate.

tiff could rest his head on the bed, or whether it too was bowed toward his feet.

Plaintiff remained in these restraints for seven hours and forty minutes, with only a 40 minute meal break after approximately five hours. During this break, plaintiff's hands were cuffed in front of his body, and his legs remained shackled. In addition, because plaintiff was unable to use any bathroom facilities throughout the entire seven hour, forty minute period, he was forced to urinate on the bed and the floor.

The parties agree that plaintiff was removed from the North Dakota-style four point restraint at 8:40 p.m. It was conceded that plaintiff was then placed in a modified form of four point restraint, called a "three point restraint" by the parties. While the evidence showed that plaintiff remained in these restraints for 23 hours, the evidence was inconclusive regarding the actual form of the three point restraints. Uncontradicted evidence did provide, however, that plaintiff spent the majority of this time in a stooped position with his wrists handcuffed together underneath one leg, and both legs shackled together. In this position, plaintiff was able to use bathroom facilities, but unable to use toilet paper.

Uncontradicted evidence further demonstrated that plaintiff spent the next seven days and fourteen hours handcuffed and in leg irons. He was released from restraints entirely on April 14, 1988.

The evidence also demonstrated that plaintiff was permitted to shower three or four times, each time while in handcuffs and leg restraints. It established that from April 5 through April 11, 1988, plaintiff was stripped and kept naked [5], and was not supplied with a blanket until April 7, 1988. Defendants testified deprivation of these articles was necessary to prevent plaintiff from stuffing clothing or bedding into his toilet and breaking it, or from tying his cell door closed. Plaintiff stated, without contradiction, that he was so cold that he eventually tore the cover off his mattress in an attempt to crawl inside for warmth.

Unrebutted evidence showed that plaintiff was taken to court on approximately April 8, 1988 for an appearance in regard to the attack on Mr. Freezon. For this hearing, his restraints were eased, and he was provided with clothes. All witnesses testified that during transportation and the appearance, plaintiff remained cooperative and unthreatening.

The evidence also demonstrated that plaintiff was not given a toothbrush or toothpaste until April 13, 1988, and his cell was illuminated twenty four hours a day throughout the entire period of confinement. During the first few days of confinement, the water in plaintiff's toilet was also disconnected. In addition, defendants failed to introduce any evidence showing that plaintiff was checked by any medical personnel during the entire period.

Evidence at trial showed that at all times plaintiff willingly permitted defendants to keep him in restraints, and he did not attempt to physically harm anyone while he remained confined. However, it did show that in the initial stages of his confinement, plaintiff made a limited number of verbal threats to his guards.

Undisputed evidence also demonstrated that the three other inmates who attacked Mr. Freezon were restrained in virtually the same manner, and released at approximately the same time as plaintiff.

At trial, all defendants testified that plaintiff was not placed in restraints for punishment reasons. Rather, each stated that the measures were taken as an emergency safety measure solely to prevent plaintiff from hurting himself or another person.

Mr. Joseph R. Rowan testified on behalf of plaintiff. Mr. Rowan was the director of International Survey and Consultation Agency, a company which surveys prisons, jails, police departments, and mental hospitals. He testified as an expert regarding the use of force in correctional facilities.

---

5. A single witness for the defense testified that plaintiff may have had a pair of shorts in the latter portion of his confinement, possibly April 8, 1988. All other plaintiff and defense witnesses testified plaintiff remained completely nude.

Dr. David Sharbo, a psychiatrist, testified on behalf of defendants. He conducted a psychiatric examination and analysis of plaintiff the week prior to commencement of trial.

## DISCUSSION

### A. Standard of Review

Rule 50 of the Federal Rules of Civil Procedure provides that:

(a) **Judgment as a Matter of Law**

(1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

. . . . .

(c) **Same: Conditional Rulings on Grant of Motion for Judgment as a Matter of Law**

. (1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

■ On a motion for judgment as a matter of law, the court must consider the evidence in the light most favorable to the party who prevailed with the jury. *Nelson v. Production Credit Assn.*, 930 F.2d 599, 603 (8th Cir.1991). Moreover, a court: .

must give the party securing the jury verdict the benefit of all reasonable inferences to be drawn from the evidence. The verdict, however, must be supported by substantial evidence; a mere scintilla is not enough. In making that determination, the record must be examined and the testimony reviewed without assigning credibility or weight to the witnesses and evidence. A trial court cannot substitute its judgment of the facts for that of the jury, and should grant a [judgment as a matter of law] 'only where the evidence points *all* one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'

*J & J Farms, Inc. v. Cargill, Inc.*, 693 F.2d 830, 835 (8th Cir.1982) (quoting *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 440–1 (8th Cir.1978)).

### B. Judgment as a Matter of Law

■ In this action, plaintiff asserted that his civil rights were infringed upon by defendants because he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. The court emphasizes that "federal courts must tread warily in reviewing the administration of internal prison discipline." *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir.1981). However, "it is equally clear that prisoners are not to be stripped and deprived of their constitutional rights when the prison gate shuts behind them." *Id.* quoting *Bell v. Wolfish*, 441 U.S. 520, 527, 99 S.Ct. 1861, 1868, 60 L.Ed.2d 447 (1979).

The issue of whether a violation of the Eighth Amendment occurred is a mixed question of fact and law. *Porth v. Farrier*, 934 F.2d 154, 156 (8th Cir.1991). "Any constitutional deprivation must demonstrate egregious conduct by the state official to sustain such a finding." *Id.* Once a plaintiff establishes that he has been deprived of his constitutional rights, plaintiff must next show factually that defendants' conduct was so egregious as to require compensatory damages. *Id.*

■ Additionally, after incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadis-

tically for the very purpose of causing harm."

*Id.* at 320–321, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.), cert. denied *sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). In such cases, "the relevant factors for consideration include: the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted." *Williams v. Burton,* 943 F.2d 1572, 1575 (11th Cir.1991). In examining the reasonableness of the duration of restraint, the court noted that "[h]ow long restraints may be continued calls for the exercise of good judgment on the part of prison officials." *Id.* at 1576.

Defendants contend here that plaintiff's motions for judgment as a matter of law, and/or for new trial must be denied because the evidence showed defendants did not act egregiously, and did not act with a sadistic or malicious intent. Defendants rely upon several cases where violations of the Eighth Amendment did not occur as a matter of law. Specifically, they refer to cases permitting inmates to be physically restrained, or deprived of clothing or bedding, or where inmates were treated in other ways similar to plaintiff in this action.[6]

However, defendants' argument ignores the crucial distinction that plaintiff in the case at bar was subjected to all of these deprivations simultaneously. Courts have expressly noted that "[t]he whole is sometimes greater than the sum of the parts: the cumulative effect of the indignities, deprivations, and constraints to which inmates are subjected determines whether they are receiving cruel and unusual punishment." *Bruscino v. Carlson,* 854 F.2d 162, 166 (7th Cir.1988). Specifically, "to find a violation of the [E]ighth [A]mendment one must consider all the surrounding circumstances and evaluate in terms of whether the conduct was 'so inhumane, base or barbaric so as to shock the sensibilities.'" *Porth v. Farrier,* 934

F.2d 154, 157 (8th Cir.1991) (citing *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989)). A violation can occur "if a prisoner was confined to a strip cell under conditions sufficiently deplorable as to offend modern standards of human decency." *Johnson v. Boreani,* 946 F.2d 67, 70 (8th Cir.1991).

Defendants did not, and indeed cannot, point to a single action where the totality of conditions to which plaintiff was subjected was determined to be permissible as a matter of law. Therefore, the initial issue before the court is whether the cumulative effect of the conceded conditions of plaintiff's confinement was so egregious that it comprised a compensable constitutional violation as a matter of law. *See Porth v. Farrier,* 934 F.2d 154, 157 (8th Cir.1991).

In conducting its analysis, the court recognizes the extreme threat plaintiff presented to defendants at the time of his confinement. The evidence demonstrated that plaintiff participated in an attack on a guard, and the penitentiary's decision to prevent plaintiff from further injuring anyone was valid and necessary.

However, in response to this attack, the parties agree that plaintiff was stripped, hog-tied on a bare bed for eight hours, unable to lay flat, forced to urinate on himself, and given only a single brief meal break in which he remained handcuffed and shackled. Plaintiff was deprived of bedding, toothpaste and a toothbrush, the use of toilet paper, and left in a cell illuminated 24 hours a day. The conditions of confinement improved only minimally over the next eight days. The chaining of an inmate in this manner and deprivation of every human necessity without provocation was so barbaric and inhumane that it could only have been done maliciously and sadistically for the very purpose of causing harm, and must be considered cruel and unusual punishment as a matter of law. Long-standing case law bears this finding out.

In *Maxwell v. Mason,* 668 F.2d 361 (8th Cir.1981), the court found that an Eighth Amendment violation occurred where an in-

---

6. *E.g. Stenzel v. Ellis,* 916 F.2d 423 (8th Cir. 1990) where an inmate was chained to a bunk overnight; *Bruscino v. Carlson,* 854 F.2d 162 (7th Cir.1988) (inmates tied to bed while spread-

eagled); *Rodgers v. Thomas,* 879 F.2d 380 (8th Cir.1989) (where deprivation of clothing was improper, but motive of prison officials not improper.)

mate, accused of violating regulations against covering cell-lights, was held in solitary confinement dressed in undershorts alone, and with only a mattress, for 14 days. The court stated that clothing was a basic necessity of human life which cannot be deprived in the same manner as a privilege an inmate may enjoy. Any deprivation of such basic necessities "takes on added importance where it occurs in a condition of solitary confinement." *Id.* at 365. The court then concluded that a violation occurred because plaintiff's confinement bore no relationship to relevant security measures. Similarly, in this the instant case, deprivation of plaintiff's clothing and bedding while he was restrained was inexplicable.

*Wycoff v. Brewer*, 572 F.2d 1260 (8th Cir. 1978), also bears a strong similarity with the case at bar. In that action, the plaintiff inmate, "a sociopathic criminal[,] who is violent and dangerous and who is a strong man physically," was confined to a strip cell after making threats, throwing human waste, and destroying this entire cell. *Id.* at 1264. While in strip cells in the prison, inmates were completely nude, denied bedding, and in some circumstances, not provided with toilet articles or toilet paper. The court stated in connection with the plaintiff inmate's suit for violation of his Eighth Amendment rights, that "[w]e condemn without reservation plaintiff's confinement in strip cells under the conditions that have been mentioned. Those conditions were referred to by [the District Court Judge in *Kelly v. Brewer*, 525 F.2d 394 (8th Cir.1975) ] as being 'subhuman and subanimal.'" *Id.* at 1266.

The court notes here that the conditions of plaintiff's confinement in the instant action were far more egregious than in *Wycoff*. This is particularly noteworthy since, unlike the inmate in *Wycoff*, no evidence demonstrated that plaintiff entertained even the remotest inclination to damage his cell.

In contrast to these actions, defendant asserts that plaintiff's conditions of restraint resemble those in *Williams v. Burton*, 943 F.2d 1572 (11th Cir.1991) and *LeMaire v. Maass*, Nos. 91–35249, 91–35557, 1993 WL 267463 (9th Cir. Aug. 13, 1993), where constitutional violations were found not to exist as a matter of law.

In *Williams*, an inmate with a history of persistent disobedience incited a commotion among fellow inmates and repeatedly threatened physical harm. The court found prison actions in gagging the plaintiff and placing him in a spread-eagled four point restraint with straps for twenty-eight and one-half hours were not constitutional violations.

However, unlike the case at bar, the plaintiff in *Williams* was confined with straps, not mechanical devices, to a four point restraint which permitted him to lie down flat. He enjoyed eating, physical exercise, and toilet breaks. The evidence also showed that plaintiff was clothed during the confinement, and precautions were taken to ensure his physical well-being through constant monitoring and examinations by medical personnel. Further, unlike here, plaintiff did not suffer any actual injury.

In *LeMaire*, the plaintiff inmate asserted that six separate practices of the Oregon State Prison violated the Constitution. Plaintiff challenged the use of a substance called Nutraloaf for inmates who threw or misused food and human waste, use of restraints while an inmate was showering, curtailment of out-of-doors exercise privileges, temporary placement of inmates in illuminated "quiet cells", use of in-cell restraints, and removal of an inmate's clothing after the inmate misused it. The Court of Appeal reversed the District Court's finding that most of these conditions were violations of the Eighth Amendment.

The court finds that, as in *Williams*, the facts in *LeMaire* are so different from the case at bar that it provides little guidance. In *LeMaire*, the prison confiscated clothing and bedding for periods of three days or less and there was no evidence that the inmate was placed in four point restraints at the same time. Neither was there a showing that the inmate was denied toilet access, and the in-cell restraints challenged involved a spread-eagled four point restraint of the inmate.

This court, however, will not rest its decision that plaintiff suffered a compensable

constitutional violation solely on its application of law to the settled, objective facts of plaintiff's confinement. A discussion is in order regarding how, after viewing all of the evidence and any possible inferences in defendants' favor, no reasonable basis existed for the jury's verdict that defendants' conduct was not so egregious so as to be motivated for sadistic and malicious purposes.

Defendants failed to rebut testimony by Mr. Rowan that the use of a North Dakota style four point restraint could only be justified for periods of four hours or less, and use beyond this time was inhumane and served punitive purposes alone. Mr. Rowan specifically stated that referral for mental health treatment was required when an individual was still uncontrollable after four hours. Mr. Rowan testified without contradiction that, in fact, defendants' treatment of plaintiff would be directly counter-productive to defendants' stated security motivations, since the length of time plaintiff was four pointed would only exacerbate any inclinations toward misconduct rather than minimize it.

Moreover, defendants failed to present any evidence contradicting Mr. Rowan's expert conclusion that the use of restraints in conjunction with the other conditions of plaintiff's confinement in this case "had no penological or sound or rational reason." Trial Tr. of Mr. Rowan at 11.

Instead, defendants only argued that they had four pointed inmates in the past, and no inmate had succeeded in freeing himself from it. Such evidence is wholly insufficient to rebut Mr. Rowan's testimony, or to establish that four pointing plaintiff North Dakota-style under the conditions in this case, was acceptable security control by defendants.

Further, assuming, as the court must, that defendants' concerns were valid that other inmates had broken toilets and tied cell doors closed with their clothing or bedding, defendants were unable to explain why total denial of basic human needs of warmth and use of the toilet were warranted. Most importantly, defendants failed to show that plaintiff himself was physically capable of removing his clothing or bedding, and maneuvering them into the toilet or around the cell door while hog-tied.

Defendants did not counter the evidence at trial that either removing clothing and bedding or turning off the toilet water would suffice to protect the toilet and cell doors. No evidence was introduced to counter the showing that defendants' duplicative actions of removing plaintiff's clothes and bedding, and turning off his toilet were motivated by anything other than a malicious and sadistic intent to deprive plaintiff of basic human rights. Defendants did not respond to evidence that plaintiff need not have been deprived of toilet access altogether because a prison official could have turned on the water in the toilet, watched plaintiff, and turned off the water after use.

Not only did all the evidence show that the initial conditions of plaintiff's confinement were indefensible, but it demonstrated that the strained and protracted circumstances of plaintiff's confinement also contributed to the violation of his constitutional rights.

Although uncontradicted evidence showed that plaintiff cooperated in permitting defendants to shackle him, and that plaintiff did not engage in any improper behavior after his initial threats, defendants failed to introduce any evidence demonstrating why it was necessary for "security reasons" to keep plaintiff restrained for eight more days.

Further, defendants failed to present any tenable reason for keeping most, if not all, of plaintiff's clothing for over six days. Not a scintilla of evidence was presented to show that plaintiff had a propensity for using his clothing or bedding for an improper purpose, that he might ever consider doing so, or that as his restraints were lessened, plaintiff exhibited indications that he would misuse clothing or bedding. *See Maxwell v. Mason,* 668 F.2d 361 (8th Cir.1981). The court finds it particularly impossible to attribute permissible motivations to defendants since they denied plaintiff clothing on the grounds he might misuse it, yet defendants eventually gave plaintiff a blanket, and possibly some shorts, which could likewise be abused.

Evidence of plaintiff's appearance in court for his attack on Mr. Freezon also confirmed that defendants' conduct was so egregious it was motivated for sadistic and malicious pur-

poses only. Despite consistent testimony from plaintiff's and defendants' witnesses that plaintiff remained cooperative and peaceful at all times, defendants failed to explain why it was "safe" to transport plaintiff to and from the court while fully clothed and in lessened restraints, but it became immediately "unsafe" to permit plaintiff to retain clothing and stay in fewer shackles once he was back in the observation unit.

Defendants also failed to present evidence to contradict plaintiff's showing that deprivation of plaintiff's ability to use toilet paper while he was in three-point restraints, and confiscation of his toothpaste and a toothbrush, did not serve security interests, but rather were done for purely malicious reasons. Defendants failed to rebut evidence that all legitimate safety concerns could have been easily addressed by temporarily modifying plaintiff's restraints, or temporarily providing these items, under the watchful eye of prison personnel.

Further, defendants failed to present any evidence demonstrating that medical personnel examined plaintiff during or after his confinement. This omission is especially egregious in view of the fact plaintiff's cell was located adjacent to the prison's infirmary.

Finally, and most tellingly, uncontradicted evidence showed that defendants treated all four inmates who participated in the attack on Mr. Freezon in the same manner. It is inconceivable that each inmates' conduct after the attack presented the identical nine day threat to prison security, and warranted identical conditions of confinement. The only reasonable assumption the jury could have made was that defendants' intentions in restraining plaintiff were malicious and sadistic.

The court also finds that unrebutted evidence demonstrated plaintiff suffered pain and suffering from his confinement. Plaintiff testified he suffered numerous and severe muscular cramps and pain during and after his confinement. He stated that he had long term mental and emotional damage as well. The only evidence presented by defendants on this point was Dr. Sharbo's testimony that at the time he examined plaintiff on the eve of trial, plaintiff was not suffering from any mental, physical, or emotional injury. Dr. Sharbo did not testify whether plaintiff suffered injury prior to his examination, and no evidence whatsoever was introduced by defendants to counter plaintiff's testimony that he suffered damage prior to his examination.

In conclusion, the court finds defendants' conduct was so egregious that it was a violation of plaintiff's Eighth Amendment rights as a matter of law, and that no legally sufficient evidentiary basis existed for the jury to have found that defendants acted constitutionally. Consequently, plaintiff's motion for judgment as a matter of law must be granted in full.

### C. Motion for New Trial

For the same reasons the court set forth in finding that the plaintiff is entitled to judgment as a matter of law, the court also finds that the verdict is against the clear weight of the evidence and that substantial justice has not been done.

The court further finds that its failure to grant plaintiff's motion for mistrial as a result of defendants' counsel's statement in opening argument that plaintiff was a suspect in a murder investigation, was prejudicial error. The court emphasizes that because defendants' counsel's comment was made in the beginning of trial, the jury was aware of the reference throughout all of the testimony. The court determines that its instructions to the jury to disregard the statement failed to cure this error, and that plaintiff's motion for a new trial would be properly granted on this ground alone.

Finally, the court finds that all other grounds relied upon by plaintiff for its motion for new trial are without merit.

Plaintiff is therefore granted a conditional new trial, on the grounds the verdict was against the clear weight of the evidence and the court improperly denied plaintiff's motion for mistrial, in the event that the judgment as a matter of law is not upheld on appeal. *See* Fed.R.Civ.P. 50(c)(1).

## CONCLUSION

**Therefore,** plaintiff's Motion for Judgment as a Matter of Law is in all things **GRANTED.** The court orders that, accordingly, the matter be set for trial on the sole issue of the amount of damages properly recoverable by plaintiff.

In the event that the judgment as a matter of law is not upheld on appeal, plaintiff's Motion for New Trial is **GRANTED.**