Courtney WILKINS, Appellee,

v.

Dick MOORE; George Lombardi; Paul K. Delo; Phillip Nixon; Lonnie Salts; James McGinley, COII, Defendants,

David McPeak, Appellant,

Beverly Howell, COII; Wanda Davis; Donnie Taylor; Greg Wilson; Fred Treece, Defendants,

Norma Lavrrar, Appellant,

Ralph Nichols; Pedro Cayabyab, Dr.; Charles Harris; Ray Pogue; Betty Weber; Donna McCondichie; Sharon Perkins, COIII; Diana Pashea; Linda Wilkson; William Armontrout; Ben Davis; Fred Johnson; Rick Jones; Donald Petrie; Rick Coleman; James Amacker; Brian Allen; Ronda Pash; Unknown Kuhz, COI, Defendants,

Carl McCory, COI, Appellant,

Unknown Ester, Defendant,

James Herman, COI, Appellant,

Diane Bingham; Unknown Pulliam, COI; Unknown Majors, COII, Defendants.

No. 94–1375.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Nov. 25, 1994.

Deborah Yates, St. Louis, MO, argued for appellant.

Alan Koshner, St. Louis, MO, argued (Leonard W. Buckley, Jr., on the brief), for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Courtney Wilkins, a Missouri prisoner, filed this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 against prison guards and others alleging that the guards beat and abused him in violation of his eighth amendment right as a prisoner to be free from cruel and unusual punishment. Wilkins asserted several claims: assault (count 1); depriving him of clothing (count 2); denial of medical care (count 3); and denial of procedural due process (count 4).

In response to motions for summary judgment, first considered by a magistrate judge and thereafter ruled upon by the district

judge[1], the district court denied summary judgment for the assault claim, consistent with the magistrate judge's recommendation, and, contrary to the magistrate judge's recommendations, determined that a jury issue also existed as to the charges made against four officers (Norma Lavrrar, David McPeak, Carl McCory and James Herman) for leaving Wilkins naked in a cell for at least twenty-two hours with only a mattress and unclean bedding.

The defendants remaining in the assault claim (officers Ester, Howell, Majors, McGinley, Nichols, Nixon, Pashea and Salts) have not appealed. The four defendants named in the deprivation of clothing charges do appeal, asserting a qualified immunity defense as to what is denominated in count 2. They do not otherwise appeal the denial of summary judgment on count 1.. On consideration of the record, we deny these defendants qualified immunity and affirm.

## I. BACKGROUND

As a preliminary matter, we note that Wilkins' deprivation of clothing claim incorporates the factual allegations raised in his assault claim. Moreover, all defendants named in the deprivation of clothing count (Lavrrar, McPeak, McCory and Herman) remain with others as participant defendants on the assault claims. Accordingly, since the assault and deprivation of clothing claims coexist in count 2, we briefly summarize the facts relating to the assaults.

On March 2, 1991, at approximately 4:00 p.m., inmate Courtney Wilkins had just completed his evening meal in the inmate dining room at the Potosi Correctional Center.[2] As Wilkins stood up to leave, correctional officer Phillip Nixon noticed that Wilkins was wearing a red bandanna which Nixon interpreted to be a display of gang colors. Nixon began to reprimand Wilkins when another inmate in the cafeteria, Andre Evans, stood up and began yelling at Nixon, defending Wilkins' right to wear the bandanna. When additional correctional officers came to assist Nixon

in controlling Evans, an altercation broke out among three inmates and several correctional officers. Wilkins did not participate in the fight.

Thirty-five minutes later, Wilkins claims, he was taken to a "little room by Medical," where supervisor Lavrrar and officers McPeak and McCory, as well as other unnamed officers, demanded that Wilkins write a statement exonerating the correctional officers from any wrongdoing in the dining room incident. Wilkins refused. Supervisor Lavrrar then allegedly slapped Wilkins, and officer McPeak jerked on his handcuffs and hit him in the back of his head. Wilkins claims that supervisor Lavrrar then told officers McPeak and McCory to place Wilkins' "stinking black ass" in detention.

Thereafter, for over twenty-two hours, Wilkins was left naked in a detention cell, allegedly with unclean bedding, unclean floors, poor lighting, and no blankets—although he did have a mattress. During these same twenty-two hours, Wilkins additionally alleges that he suffered continuous physical and emotional abuse at the hands of the named defendants.

For example, Wilkins contends that while escorting a handcuffed Wilkins to and from Housing Unit 2, officer David McPeak on three separate occasions yanked on Wilkins' handcuffs, slammed Wilkins into doors and walls, and hit and slapped Wilkins repeatedly.. On yet another occasion within the "scope" of Wilkins' confinement, McPeak is alleged to have exercised excessive force in throwing Wilkins to the ground and holding Wilkins there while another officer forcefully entered Wilkins' rectum with a gloved finger. For several of these incidents, Wilkins claims he experienced extreme pain and emotional distress, including bruises,. bumps on his head, an injury to his knee, swollen wrists, and a small laceration on his wrist.

Wilkins also alleges that officers Carl McCory and James Herman, who along with David McPeak brought Wilkins to his strip

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

2. Wilkins is currently an inmate at Moberly Correctional Center, Randolph County, Missouri. At all times relevant to this lawsuit, Wilkins was an inmate at the Potosi Correctional Center.

cell, watched as officer McPeak assaulted Wilkins on two separate occasions within the scope of Wilkins' strip cell confinement. And finally, as to shift supervisor Norma Lavrrar, in addition to ordering Wilkins' strip cell confinement, she allegedly struck Wilkins when he refused to sign a statement exonerating the correctional officers for any wrongdoing in the dining room incident.

Observing the relationship between the assault claims and placing Wilkins naked in solitary confinement as constitutional deprivations, we relate the crucial recommendation of the magistrate judge and the district court rulings. The magistrate judge wrote:

[A] jury could believe that the assaults did occur and that pain was maliciously and sadistically caused by defendants McPeak, Lavrarr [sic], McGuenley [sic], Salts and Nixon. Plaintiff claims these guards beat him or sexually assaulted him to make him sign a statement exonerating other guards in a dining hall melee.

*Wilkins v. Moore, et al.,* No. 91–1522–C–7 (E.D.Mo. Dec. 18, 1993) (Report and Recommendation of United States Magistrate Judge at 2–3).

The district court, in reviewing the record, made these determinations:

Viewing the record in the light most favorable to Plaintiff, he has demonstrated a factual dispute as to whether Defendant McPeak slammed Plaintiff into walls or doors or hit or slapped him, and whether Officers McCory, Kuhz, and Ester witnessed those actions.

... Lavrrar allegedly told Officers McPeak and McCory to place Plaintiff's "stinking black ass" in detention.... Plaintiff has demonstrated a factual dispute as to whether he was threatened and struck by Officers Lavrrar and McPeak and as to whether Officers McCory and Majors stood by and did nothing to stop the attacks.

... Plaintiff has demonstrated a factual dispute as to whether Defendant McPeak assaulted him on the way back to the detention unit, and as to whether Officers McCory, Herman, and Davis witnessed those assaults.

....

... Plaintiff's Third Amended Complaint alleges that he was left naked for "at least nine (9) days." (*Id.* [Pltf's Aff., ¶ 36]). However, at his deposition, Plaintiff testified twice that he was naked for only 22–23 hours, with one 20 minute break in the middle. (Pltf's Dep. at 72–73; 198–99). Plaintiff's affidavit, executed after his deposition in response to Defendants' Motion for Summary Judgment, merely duplicates the nine day allegation in his Complaint. Given the direct conflict between Plaintiff's deposition and later affidavit, the Court will credit the deposition testimony that Plaintiff was naked for 22–23 hours.

....

That evening Officer McPeak escorted Plaintiff to the medical unit. On the way, McPeak allegedly yanked on Plaintiff's handcuffs and slapped and punched him about the head....

... When Plaintiff refused, Officers Salts, Nixon, and McPeak allegedly threw Plaintiff to the floor [in medical unit] and held him down while Sergeant McGinley stuck his gloved finger in Plaintiff's rectum....

....

... Officers McCory, James Herman, and Ben Davis allegedly watched McPeak slam Plaintiff into doors and walls on the way back from the "little room," and failed to stop him.

*Wilkins v. Moore, et al.,* No. 91–1522–C–7 (E.D.Mo. Jan. 24, 1994) (Memorandum and Order at 6–7, 8, 10, 11, 19).

The district court concluded:

By his deposition testimony and affidavit, Plaintiff has demonstrated a factual dispute as to whether Officer David McPeak maliciously and sadistically yanked on Plaintiff's handcuffs, slammed him into walls and doors, and struck him about the head and shoulders on numerous occasions on March 2 and 3, 1991. Plaintiff also shows a factual dispute as to whether shift supervisor Norma Lavrrar gratuitously struck him in the "little room by Medical" after he refused to sign a statement on the evening of March 2.

Plaintiff has raised a dispute of material fact as to whether Officers McPeak, Salts, and Nixon maliciously restrained Plaintiff while Officer McGinley stuck a finger in Plaintiff's rectum on March 3, 1991. Finally, Plaintiff has demonstrated a factual question on whether Officer Diane Pashea acted maliciously and sadistically when she handcuffed Plaintiff roughly during a cell search on March 7, 1991. Because Plaintiff may be able to make out an Eighth Amendment claim under *Hudson* against Officers McPeak, Lavrrar, Salts, Nixon, McGinley, and Pashea, Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims in Count I is denied as to these Defendants on these occasions.

*Id.* at 18–19.

In rejecting defendants' qualified immunity defense on the deprivation of clothing claim, the district court stated that a factual dispute existed for a jury determination of the guards' improper punitive motive for placing Wilkins' naked body in a strip cell. The court rejected appellants' argument that as a matter of law the conduct constituted a legitimate security measure, and observed some differences in result in several Eighth Circuit cases cited below. *Compare Rodgers v. Thomas,* 879 F.2d 380 (8th Cir.1989) (dismissal affirmed; deprivation of all clothing but socks and underwear for five days does not demonstrate wanton infliction of pain where prisoner given a mattress, sheets and blankets and suffered no pain); *Johnson v. Boreani,* 946 F.2d 67 (8th Cir.1991) (although naked confinement to strip cell can constitute cruel and unusual punishment, prison officials entitled to qualified immunity where no allegation of pain or other injury is shown) *with Porth v. Farrier,* 934 F.2d 154 (8th Cir.1991) (confinement in strip cell for twelve hours without clothes, bedding or mattress creates a fact question for jury on eighth amendment violation, but not a per se violation). The court, in support, also cited *Maxwell v. Mason,* 668 F.2d 361, 363 (8th Cir. 1981) and *Wycoff v. Brewer,* 572 F.2d 1260, 1263 n. 5 (8th Cir.1978).

The district court concluded:

However, applying *Porth,* the Court finds that Plaintiff has stated sufficient facts to survive summary judgment on Count II, and that his Eighth Amendment claim is for the jury to determine.

Defendants make a conclusory, blanket assertion of qualified immunity on all counts in their motion (¶ 13). However, they provide no support in their Memorandum for qualified immunity on Count II. Although *Porth* was decided several months after the events giving rise to this lawsuit, the Court finds that Plaintiff's Eighth Amendment right to adequate clothing was clearly established by *Maxwell* and *Wycoff,* and that Defendants are not entitled to qualified immunity. *Anderson v. Creighton,* 483 U.S. 635, 639–40 [107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523] (1987) (official not entitled to qualified immunity if he violated "clearly established" right). Therefore Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claim in Count II is denied as to Defendants Lavrrar (who ordered that Plaintiff be stripped), McPeak, McCory, and Herman. Although Defendant Ben Davis participated in stripping Plaintiff, he has been dismissed for lack of service.

*Wilkins v. Moore, et al.,* No. 91–1522–C–7 (E.D.Mo. Jan. 24, 1994) (Memorandum and Order at 26–27) (footnote omitted).

## II. DISCUSSION

On this appeal, appellants reargue their qualified immunity defense to Wilkins' deprivation of clothing claim. Appellants argue that no established law demonstrates any constitutional violation where the duration of the strip cell confinement is twenty-two to twenty-three hours, as here, and where no allegations of serious injuries occurred.

The decisions in *Boreani,* 946 F.2d at 71; *Porth,* 934 F.2d at 157–58; and *Rodgers,* 879 F.2d at 385, may be distinguishable on their facts. In *Boreani,* no injury occurred during the duration of the strip cell incarceration. Here, injury occurred within the scope of the strip cell confinement, even though outside the cell. *Porth,* as noted, decided no liability as a factual matter. As to *Rodgers,* appel-

lants properly note the lack of physical or emotional pain suffered by the prisoner in that case, save for some minor flu symptoms. Moreover, the court in *Rodgers* distinguished *Maxwell* on its facts and the instant case may·be distinguishable.

But we need not and do not rely on any *Maxwell/Rodgers* distinction, nor do we need to distinguish this case from *Boreani* and *Porth.* Because there exists an interrelationship between the assaults already determined to be a fact issue for trial and the deprivation of Wilkins' clothing, one claim cannot be analyzed independently from the other.

We are not dealing here with an amorphous "overall prison conditions" claim as discussed in *Wilson v. Seiter,* 501 U.S. 294, 111·S.Ct. 2321, 115 L.Ed.2d 271 (1991), nor are we dealing here with the more particularized claim of prison officials failing to ensure an inmate's safety under the deliberate indifference standard of *Farmer v. Brennan,* ——U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Here, we deal with allegations of unnecessary and wanton brutality that is supported by evidence in a prison setting.

The allegations relating to the deprivation of clothing, as we have already noted, incorporate the assault allegations. The facts, as asserted by the plaintiff, recite a continuous course of mistreatment that **includes** the strip cell detention, beatings at the hands of several prison guards, the indignity of having a prison guard run his finger into the plaintiff's rectum, *cf. McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir.1986), as well as other indignities.

Although "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979), "[i]t does not insulate from review actions taken in bad faith and for no legitimate purpose." *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Stenzel v. Ellis,* 916 F.2d 423, 427 (8th Cir.1990).

Here, the entire scenario, including the deprivation of clothing, supports a jury question as to "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1084–85; *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). Appellants have already conceded the necessity of a trial on the merits for the assault claim asserted in count 1. On the record here, the deprivation of clothing claim that constitutes count 2 is part and parcel of the larger claims of brutality and excessive force. In fact, the very factors that go into the *Whitley/Hudson* test of "excessive force," including the need for force and· the correlation between the need for force and the amount of force used, *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085; *Hudson,* —— U.S. at ——, 112 S.Ct. at 999; *Stenzel,* 916 F.2d at 427, would require the trial court in this case to consider with the assault claim the deprivation of clothing claim.

Thus, a fact finder may draw "reliable inference[s]" "as to whether the use of force could plausibly have been thought necessary," *Whitley,* 475 U.S. at 321–22, 106 S.Ct. at 1085–86, or instead "exceeded the amount of force that was justified under the circumstances." *McLaurin v. Prater,* 30 F.3d 982, 984 (8th Cir.1994); *see also Hickey v. Reeder,* 12 F.3d 754, 758–59 (8th Cir.1993).

The fact finder will need to determine, on all the evidence relating to beatings, removal of all·clothing and other indignities, if established, whether the officers' conduct satisfied reasonable safety and security concerns or, rather, was exercised maliciously and sadistically. Because the "excessive force" and "conditions-of-confinement" claims in this case are so analytically and factually intertwined, the plaintiff's charges require consideration of the evidence relating to both claims as a continuous course of conduct.

Accordingly, for the reasons stated herein, we affirm the denial of qualified immunity on the claim asserted in count 2.